## Case No. 1,611.

### The BOLIVAR v. The CHALMETTE.

[1 Woods, 397.] [1]

Circuit Court, E. D. Texas. May Term, 1872.

SALVAGE — COMPENSATION — DISABLED VESSEL IN TOW—DISTRIBUTION.

1. A low rate of salvage should be allowed where the salvors in good weather simply towed a vessel disabled, but in no immediate danger, a distance of thirty miles to a safe anchorage, but incurred no risk of life or property, and no deviation from their ordinary pursuits.

2. When a disabled vessel needed towage only, and her officers applied therefor to a tug, which refused towage and insisted on taking her chances as a salvor, and this was not prevented by the officers of the disabled ship; *held*, that these circumstances tended to reduce the grade of salvage allowance.

[Cited in The New Orleans, 23 Fed. 911; The Cachemire, 38 Fed. 522; Spreckels v. The State of California, 45 Fed. 649.]

3. In this case the decree of the district court allowing ten per cent. salvage was reversed because the allowance was too large, and a decree rendered for five per cent. only.

[Appeal from the district court of the United States for the eastern district of Texas.]

At chambers. In June, 1871, the bark Chalmette, which was at anchor outside of Galveston bar, receiving a cargo of cotton brought by lighters from Galveston, was driven by a storm from her moorings, a distance of thirty miles, when she came to anchor in a disabled condition. She was towed back to her anchorage by the tug Bolivar, whose owners filed a libel against the bark for salvage. The other facts of the case sufficiently appear in the opinion of the court. [Reversed and decree of distribution made.]

O. M. Watkins, for libellant.

W. P. Ballinger, for claimant.

BRADLEY, Circuit Justice. It is admitted that this is a case of salvage. The question is simply one of amount of allowance, and mode of distribution. The conviction is very strongly impressed upon my mind that it is a case of very low grade of salvage. There was no danger incurred by the salvors, no risk of life or property, no deviation even from ordinary pursuits—or if any deviation, a mere extension of them to an unaccustomed distance from shore. The ship salved, it is true, was in a disabled condition, and needed assistance; but she was perfectly safe at the time, lying in almost still water, about thirty miles from Galveston bar. and twenty miles from land, with one anchor and two

¹ [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

chains out; and her captain, who was in Galveston, knew her location and situation, and was engaged in seeking the services of a steamer or tug boat to tow her back to her anchorage ground, from which she had been driven. This was known to the salvors. The agent of the steam tug Bolivar was applied to for the services of the tug to bring her in. He declined to undertake the office of towing in the bark for an agreed compensation, but said he was going down to her to take his chances—meaning, it is presumed, his chances of securing her as a salvor, and making a claim for salvage services. Now as towing vessels in and out of Galveston harbor was the business of the steam tug, this conduct, at such a time, and under such circumstances, was somewhat extraordinary. Had not the captain finally yielded to this proposition, and asked for a passage to his ship for himself and some of his crew who had left her, it might well have been doubted whether it was a case of salvage at all. If my ship is disabled, but perfectly safe for the time being, and I go ashore to employ a tug boat to tow her into port, in mild weather, presenting no danger or risk, can the owners of vessels whose business it is to do just such work, decline my employment and hasten off in a race to see which shall first seize my ship as a salvage prize? This, instead of encouraging that enterprise and daring which the laws relating to salvage are intended to foster, would be to encourage sharp practice and unconscionable speculation.

It must be admitted, however, that the Bolivar was entitled to some credit for her efforts to find the Chalmette on the 10th of June, immediately after the storm had subsided. But even with regard to that excursion, it is to be remarked that she had been loading the barque with cotton, and had two hundred bales for her then on board, and desired to be relieved of it, and to finish her job as a lighter. But knowing, as the agent of the Bolivar did, that the captain of the Chalmette desired a tow merely, and that there were other steamers in port or in reach which could be obtained for that purpose, and which it seems. were offered at a reasonable price, and would have been accepted at once but for some delay which they would sustain in getting ready to start; it is evident that his great haste to get off was not so much dictated by anxiety for the safety of the Chalmette as by his anxiety to be first in the race for salvage. And, then, after meeting the pilot boat Eclipse, which had just come from the Chalmette, and learning the exact condition of the latter, and the fact that the second mate was on board, and had sent the first mate with a letter to the captain, requesting him to employ a steamer to tow the barque into port; the agent of the Bolivar must have known perfectly well. that all which the officer in charge of the Chalmette wanted was towage.

The result of the case is, that what the

Chalmette needed, and was endeavoring to obtain, was simply towage; that the Bolivar refused to act as tow, and insisted on taking her chances as a salvor, and that this was not prevented on the part of the officers of the Chalmette. Under these circumstances, whilst the salvors are entitled to a greater remuneration than mere pay for the services of towage, it seems to me that they are only entitled to a low grade of salvage allowance. I think the amount allowed is greater than the case requires. Had the Bolivar found the Chalmette in the situation in which she was, without having been previously applied to to tow her into port, and had she given her relief and brought her into port as in ordinary cases, the amount would not have been at all excessive. It is the peculiar circumstances of the case that put a different aspect upon the question of compensation. The amount allowed by the district court is about ten per cent. I think about five per cent. would have been ample, considering the value of the ship and cargo salved. The decree below will be reversed and a decree made for the allowance of seven thousand five hundred dollars for salvage service in the case, to be distributed as follows: To the owners and crew of the pilot boat, Eclipse, $1,500, and the balance of $6,000 to the Bolivar and her crew, the latter sum to be distributed as follows, to wit: To the owners of the Bolivar, $3,000; to the captain, $500; to the mate, $250; to the engineer, $250; to the second mate, $200; to the seamen, $1,800, to be divided equally between them; and that the claimants pay the costs of suit, both of the district and circuit courts, and that a formal decree, with the proper directions be drawn up accordingly.