## ANN, The, (BELL v.)
[See Bell v. The Ann, Case No. 1,245.]

## ANN, The, (UNITED STATES v.)
[See United States v. The Ann, Case No. 14,- 456.]

## Case No. 398.

### The ANNA.

[6 Ben. 166][1]

District Court, E. D. New York.  July, 1872.[2]

SALVAGE — DERELICT — APPORTIONMENT OF SALVAGE — SPECIAL AGREEMENT OF MASTER.

1. The brig A. came into collision with another vessel, about 50 miles from Sandy Hook, at night, in a thick fog, when it was blowing hard. She received injuries, which led her master and crew to think she was about to sink, and they left her and got on board the other vessel. The next morning, about 7 A. M., the fog cleared off, and the master of the A., saw her about eleven miles off, but made no effort to return to her. The bark W. S., bound to New York, came to the A., and put on board of her a mate and one man, who got sail on her, and proceeded towards New York, taking a pilot about 10 A. M., and a tug about 11 A. M., which for the agreed sum of $600, towed the A. to New York, reaching the dock about 9 P. M. The A. was worth $3,500, her freight amounted to $1,500, and her cargo was worth $25,589, making in all $30,589. The master of the W. S. was sailing her under an agreement with her owners, to make this voyage on shares, he to navigate her, victual and man her, and pay half her port charges, and to receive half the earnings: *Held*, That, whether this was strictly a case of derelict or not, it was the case of a vessel abandoned at sea, where no evidence was given of an intention on the part of her master to return to her, and the awards, which have been given in cases of derelict, might well be looked to, as affording some guide to the judgment.

2. That $6,000 was a proper sum to be awarded as salvage, from which should be deducted the $600 paid to the tug by the claimants.

[Cited in The S. A. Rudolph, 39 Fed. 333; The Scow, 46 Fed. 408.]

[1][Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2][Affirmed by the circuit court in The Anna, Case No. 401.]

3. That the master, by reason of the agreement between him and the owners, should receive $500 more than otherwise would have been his share, and that the award be apportioned as follows:

| | | | | |
|---|---|---|---|---|
| To the master of the W. S. | | | | $2,300 |
| " " owners " " " " | | | | 1,800 |
| " " mate " " " " | | | | 800 |
| " " seaman who went with him.. | | | | 200 |
| " " 3 " " staid on the W. S., in proportion to their wages.. | | | | 300 |

[Cited in The S. A. Rudolph, 39 Fed. 333.]

[In admiralty. Libel by the owners of the bark Wylie Smith to recover salvage of the brig Anna and her cargo. Decree for libellant. Affirmed, under title of The Anna, Case No. 401.]

Goodrich & Wheeler, and W. R. Darling, for libellants.

Scudder & Carter, for claimants.

BENEDICT, District Judge. This is an action on behalf of the master and owners and crew of the bark Wylie Smith, to recover salvage of the brig Anna, and her cargo.

It appears that on the night of the 9th of April, 1872, the brig Anna came into collision with the bark Narragansett, off the Woodlands, in a thick fog and blowing hard. The master of the Anna, who was her owner, says the collision was a violent one, and shook her from stem to stern, and the blow was so violent that she leaked all over her house and deck. On the supposition that she would sink forthwith, all hands on board of her at once abandoned her and made for the bark, which they reached in safety. The wind had been blowing hard for about three hours before the collision, and continued to blow during the night with a heavy sea on. About four o'clock A. M. the wind went to the westward and moderated. The fog cleared off at about 7 A. M., when the Anna was discovered in sight of the Narragansett, about eleven miles off. The evidence fails to show that the owner of the Anna had any intention or desire to return to his vessel. No attempt was made to do so. About the same hour the Wylie Smith discovered the Anna abandoned; and, proceeding to her, placed on board of her a mate and a man, who undertook to get her into New York. The bulwarks were found broken on the starboard side from the main rigging forward, the jib boom broken and hanging across her bow, and the bowsprit split, and fourteen inches of water in her. She was not seriously injured, and could without difficulty sail to New York if properly manned. She was then about thirty miles southeast of the Highlands, with no land in sight but several vessels to be seen a long distance off at sea. The mate of the Wylie Smith got sail upon the brig, and proceeded towards New York, with the wind southwest but hauling to the westward, the Wylie Smith herself having proceeded on her voyage to New York. About 10 A. M. a pilot boarded the Anna, and about 11 A. M. a tug, cruising

for business, approached, with whom a bargain was made by the salvors to tow them to New York for six hundred dollars.

They reached the dock in New York about 9 o'clock P. M. The value of the brig was $3,500, the freight amounted to about $1,500, and the cargo is valued at $25,589.

It is necessary only to allude here to the considerations which govern in awarding salvage. The amount is to be determined upon the consideration of all the circumstances, having reference not only to the labor and risk on the part of the salvors, and the advantage to the owners of the property saved, but also to the interests of commerce. In cases of derelict, one reason for a liberal award is stated to be that the property having been abandoned as lost, it does not lie in the mouth of its owner to complain of the reward paid to strangers, who return his property to him. And this consideration has been adverted to as having equal force whether the vessel abandoned is in a sound or wrecked condition. The rule of the ordinance was applied to a sound vessel abandoned when pursued by pirates, and subsequently found derelict. The Saint Jean Baptiste, 2 Giroud & C. 375.

Another consideration of force in this case arises out of that public interest, the protection of which lies at the foundation of the law of salvage. This brig was abandoned in near proximity to the entrance of a great sea-port, and in the track of vessels of every description inward and outward bound. Being left floating, with some sails still up, and with no one on board to set her lights, to keep her on her course, or to answer or give hails, she was a very dangerous thing. The presence of such an object in this locality at any time, if known, would justly cause alarm, and might well occasion great loss of life as well as of property. For the taking in charge and saving of a wreck so situated, the reward should be such as to insure at all times the rendering of any amount of labor, the incurring of any risk and the deviation by any vessel from any voyage in order to supply the wreck with a crew, and make her presence safe.

If, in this case, one of the ocean bound steamers had fallen in with the Anna, and turned about to tow her to a place of safety, I should not have hesitated to award liberal compensation for the detention, expense, and importance of such services, without much reference to the amount of the property absorbed thereby. But these claimants were so fortunate as to have this service (which some vessel must have rendered, if their property was ever to be restored) performed by a sailing vessel which was not required to deviate from her course, or to lose any considerable amount of time; and which, while she parted with her chief mate and a man, thereby increasing her own risk, did not sustain any loss. It is, therefore possible to give her a liberal reward without absorbing

the half or one-third part even of the property saved.

But it has been contended that this is a case of derelict, and in such cases one-third is always to be given. The law is otherwise. Post v. Jones, 19 How. [60 U. S.] 161. Whether therefore this be a case of strict derelict or not is of no importance; it is certainly the case of a salvage of a vessel abandoned at sea, where no evidence is produced of an intention on the part of her master to return to her. The awards which are made in the cases held strictly derelict, may therefore well be looked to as affording some guide to the judgment in this case.

According to the fixed regulations governing maritime courts, in many parts of the continent, salvage never exceeds one-third of the value saved, with the exception that it may be increased to one-half, when the salvage is accomplished with unusual exertions, and the value of the property is small. German Mercantile Law, 748. In France the Code de Commerce is silent upon the subject, and the Ordinance of 1681 still governs and furnishes the rule there applied, according to which, following the Roman law, one-third is awarded whenever property is found abandoned in open sea, or has been raised from its bottom. The Rhodian law distinguished between these two cases, giving one-fifth when the property was found abandoned but floating, and when property was raised from the bottom one-half to one-third, according to the depth of the water, thus recognizing that in cases of derelict, as well as others, the amount of labor expended should be taken into account. In modern cases the amount varies. In the great majority of instances the award approaches nearly to one-third. In a late case of a derelict saved without much labor, time, or risk, two-fifths were given where the value was small. Georgiana, [Case No. 5,355.]

In the case of The Viscega, Shipp. Gaz. April 30, 1859, where a derelict, valued at £1,450, was conducted into a harbor by a steamboat and a lifeboat with seven men, with little labor or loss of time and no danger, the award was £500.

In the case of The Majestas, Shipp. Gaz. March 31, 1858, a derelict, found five or six miles from the harbor, and conducted in with no difficulty by a tug in one day, on a value of £16,000, £2,000, or one-eighth, was given to the salvors.

In the light of these rules, and in view of the considerations above adverted to, I consider that the sum of $6,000 should be awarded as the salvage in this case.

From this sum must be deducted $600, the amount of the tug's bill settled by the claimants.

The next question in the case arises between the owners of the Wylie Smith and her master, respecting the apportionment of the award between them, in view of the fact that the master was not sailing on monthly

wages, but had an agreement with the owners to make this voyage on shares—he to navigate the vessel, victual and man her, and pay half the port charges, and to receive half the earnings. As to this agreement, it is to be noted that the master was not made owner pro hac vice. His agreement was only for a single voyage, for which the vessel had a charter. His position was more nearly that of a master receiving a definite sum, i. e., half the charter money, for navigating and victualing and manning the vessel during the voyage, than of an owner. It is clear, therefore, that the owners of the Wylie Smith, whose vessel was used and put at risk, are entitled to share in the salvage. But it is equally clear that part of the ordinary risk of the owners was, by the agreement between them and the master, shifted to the master. In case of disaster arising from the absence of the mate and seaman, the master would have lost, not only his services for the voyage, but also his advances for the crew, provisions, and port charges. Without undertaking to determine the exact divisions of risk which arose from this agreement, it will be just, because of it, to give master $500 more than would otherwise have been his share.

The owners will, therefore, receive $1,800; the master, $2,300; the mate, who navigated the Anna, $800; the seaman who went with him, $200; the remaining $300 to be divided among the three other men, in proportion to their wages.