## The J. W. Husted.

## The Success.

### Havens v. The J. W. Husted.

### Rogers et al. v. The Success.

*(District Court, S. D. New York. October 23, 1888.)*

SALVAGE—TUG AND TOW—INTERFERENCE BY ANOTHER TUG—COLLUSION.
The lighter S., loaded with oil barrels, and in charge of the tug C., in the North river, got into difficulty by shipping considerable water in heavy swells from a passing steamer. The C. was competent to take care of her, and was bound to do so. The tug H. came up, and against the protest of the master of the lighter, but through the evident collusion of the C., succeeded in getting the lighter in her own charge, and towed her to the dock, and pumped her out, and thereupon refused for three days to deliver her to the owners, claiming salvage compensation on the false ground that the lighter had been abandoned and rescued by the H. In towing her she was negligently run against the wharf, causing some damage. *Held,* that the case was one of officious intermeddling with the duties of the C.; that the case was not one of salvage, and that no compensation for pumping should be allowed, as it was more than offset by the injury for a groundless claim of abandonment and salvage, and detention of the lighter from her owners; and that the H. should pay for the damage her negligence had caused the lighter.

In Admiralty.

Libel by Silas F. Havens, owner of the lighter Success, against the steam-tug J. W. Husted, for damages sustained by the Success while under the unauthorized control of the Husted. Also libel by Robert Rogers and others, claimants of the J. W. Husted, against the Success on a claim for salvage.

*Wing, Shoudy & Putnam,* for libelant Havens and The Success.

*Peter C. Carter,* for Rogers et al. and The Husted.

BROWN, J. The proof does not establish that the libelant's lighter Success was overloaded, or improperly loaded, or loaded more than usual. In going up the North river, in tow of the tug Chapman, on a hawser, she shipped considerable water through the effect of the swells from passing steamers; and, the hatches not being tight, so much was taken in her hold as to make her cranky, and render it inexpedient to continue her trip. The best thing to do was to take her ashore to be pumped out. Nothing more was needed. While the Chapman was backing down along-side of her, the Husted came up and offered to pump her out, for which she had means, while the Chapman had not. The Husted's captain, in answer to inquiries, not stating the charge for pumping out, the captain of the lighter declined his services. It is clear that the captain of the Husted was determined to get or take a job; and the Chapman evidently was willing to facilitate this, and to get rid of further trouble with the lighter; and the captain of the Husted, with the evident concurrence of the Chapman, thereupon took the lighter in charge, got out a hawser, and proceeded to tow her into pier 41, North river, where he pumped her out. About the time of making fast his hawser, or soon afterwards, the lighter received two heavy lurches from swells, and a part of the oil barrels with which she was loaded went overboard. The captain of the lighter had been put by the Chapman on board the Husted, whose captain refused to allow him to go on the lighter, claiming it to be then in his charge. The captain of the lighter testifies that he demanded to be put on board the lighter in order to steer it, and states that the loss of the barrels was through want of steering, and from the sheer while in tow of the Husted. This is denied by the witnesses for the latter. The whole proceeding on the part of the Husted, I must hold to be a gross abuse. It is now claimed that the Success was abandoned, a claim wholly without foundation. The Chapman was as well able as the Husted to take her to either shore. The lighter was in charge of the Chapman, and, whatever the immediate maneuvers were, there was evidently no thought of abandoning her by either her master or the master of the Chapman. There was not the slightest cause for abandonment, and it was the Chapman's duty to take the lighter to a place of safety. It would seem, however, that upon the advice of the latter, the captain of the lighter finally assented that the Husted should take her ashore to be pumped out, and nothing more. The Husted thereby became merely a substitute for the Chapman in towing the lighter to the pier, and in performing the duty that belonged to the Chapman. As the Chapman was perfectly able to perform it, and would have done so but for the Husted's proffer, there is no foundation for any claim of salvage as claimed in the second above entitled case. The element of danger, practically, was wholly wanting. This claim was set up, however, as soon as the Husted had secured possession of the lighter, and the captain of the lighter, and the owners, for several days afterwards were debarred from any possession or control of the lighter. I am satisfied from the evidence that in approaching the wharf the jib-boom of the lighter was run up over the pier, and damages were thereby caused

to the lighter, for which the owners of the Husted must answer. Considering the unstable condition of the lighter amid the swells, although at least 20 minutes had elapsed after she had taken the water aboard, and no further trouble had arisen while she was in the Chapman's charge, in the conflict of evidence, I am not so clear that the dumping of the barrels was caused by the imprudence of the Husted, or by want of steering, as to feel authorized to charge her with the cost of picking up the barrels, or the loss of those that were not recovered. The suit for salvage must be dismissed, with costs. Any claim that the Husted might have been entitled to for pumping out, and for the time spent in towing her into the slip in place of the Chapman, I regard as fully offset by the injury and the loss to the owner of the lighter through the Husted's officious and unjustifiable interference with the duties of the Chapman; by the practical collusion by which the lighter was turned over to the Husted to make a job against the master's will; the Husted's subsequent groundless claims for salvage; and by the subsequent detention of the lighter from her owners. In the first action the libelant is entitled to a decree for the damages to the lighter by running her bowsprit upon the wharf, with costs; and a reference to compute the damages, if not agreed on.