## THE POHATCONG.

### RAMSEY et al. v. THE POHATCONG.

#### (District Court, S. D. New York. December 22, 1896.)

SALVAGE—STRANDING—HELP REFUSED BY MASTER—COMPENSATION DISALLOWED.

A tug with two barges in tow, ran them upon Man-of-War Rock in the East river. She then went to Hoboken for help from the owners to get them off. While gone, the libelants' tug repeatedly offered to pull off the barge P., which the master refused, expecting his tug to return soon. It being near the turn of the tide, the libelants' tug, without the master's assent, soon took hold, and in a short time, with the help of another tug, pulled the P. off and took her to a safe place, without damage; the other barge remained on the rock over a tide and suffered damage. *Held*, that the situation was one fairly within the scope of the master's judgment, under his general instructions not to receive outside help in such cases, and that compensation for the salvage service, though of some value, must be refused.

This was a libel in rem by Malcom Ramsey and others against the barge Pohatcong to recover compensation for alleged salvage services.

Carpenter & Park, for libelants,

Hamilton Odell, for claimants.

BROWN, District Judge. On the morning of June 20, 1896, the barges Pohatcong and Nayaug, partly laden with coal, in going up the East river in tow of the tug Scranton, grounded on Man-of-War Rock, near the end of the ledge running southerly from the southerly end of Blackwell's Island. The Scranton returned to Hoboken to procure additional help in order to take the barges off the rock. While gone, the tug Ramsey, belonging to the libelants, came up and offered to pull the Pohatcong off. The captain, however, refused to receive any aid, saying his tug had gone to get help from the owners. The pilot of the Ramsey lay near by for a considerable time, renewing his former offer, and suggesting that the tide would soon begin to ebb, and that the return of the Scranton would be too late to get the barges off. The master of the Pohatcong, however, persistently rejected these offers. Not long afterwards the master of the Ramsey ordered a line thrown to the Pohatcong, and directed two seamen upon the latter to make it fast, which they did, and after a few minutes' work, with some help from the tug McCarty, the Pohatcong was pulled off the rocks and taken to the flats near Twenty-Sixth street, where she was anchored with but little damage. When the captain of the Scranton returned not long after, the Nayaug could not be pulled off, and she remained on the rocks until the next tide.

The service rendered by the Ramsey, I have no doubt, was a bene-

ficial one. There is no reason to suppose that the Pohatcong would not have sustained considerable additional damage had she remained on the rocks until the next high tide. The Ramsey's aid, however, was positively and persistently refused by the master, even after his attention was called to the danger. I credit the testimony of the master that he was below attending to the pumps at the time when the Ramsey was made fast, and I cannot find that there was any waiver by him of his previous refusal, or any acceptance by him of the Ramsey's services, or that the act of the seamen was in any way binding upon the master or the owners of the barge, as against the master's previous refusal.

The master testifies that he was obeying the general orders of the superintendent of the line. It is quite possible that the general orders referred to were not designed to be applied in emergencies when obedience to them would involve great damage to the barge, which might be avoided by receiving aid. But it is equally possible that it was intended to rely absolutely on the judgment of the master as to the kind and amount of danger to the barge in any case that might arise, and whether any deviation from his general instructions should be made. His judgment in this case, in refusing aid when the tide was near turning, may, perhaps, have been mistaken, and the tugmen may have understood the necessities of the case better than he. But the case was one involving only ordinary property interests, and to a moderate amount; it did not involve imminent danger to life, nor the danger of large losses of the property of third persons. The refusal of the master cannot be said to have been so palpably and so grossly wrong as to amount to positive misconduct in reference to the claims of humanity, or the property interests of others, so as legally to justify intervention against his will. The case was not, I think, outside of the fair scope of the master's judgment in the exercise of his authority under the instructions given him.

I must find, therefore, that the libelants, though rendering a service which I have no doubt was of some considerable value to the defendant, were nevertheless bound to respect the master's decision, and had no legal right to impose their services upon him. Whatever may be the libelants' moral claim to compensation, it is not one which the law can recognize. The J. W. Husted, 36 Fed. 604; The Chouteau, 5 Fed. 464; Id., 9 Fed. 211; Spreckels v. The State of California, 45 Fed. 649.

It will be better in the long run, for all concerned, that the value of salvage services shall be fully appreciated, not merely from what is saved when the service is accepted, but through what is lost when it is injudiciously refused.

The libel is dismissed, but without costs.