## THE RAGNAROK.

(District Court, E. D. New York. January 11, 1908.)

1. SALVAGE—SUIT FOR COMPENSATION—EFFECT OF EXCESSIVE CLAIMS.

False allegations in a libel for salvage as to the service rendered and excessive claims for compensation may determine a doubtful case against the libelant, or may justify the denial of any compensation for services rendered, or the reduction of the amount.

2. SAME—TOWING VESSEL FROM FIRE AT WHARF—ABSENCE OF MASTER.

A tug tendered a line to a steamship which was lying at a wharf and in imminent danger of taking fire from a burning building near by, and such line was accepted by those on board in the absence of the master, and the vessel towed out of danger. *Held*, that the action of the tug was meritorious and proper, and she was entitled to a salvage award therefor, and that the master of the steamer on arriving and terminating the service could not repudiate that already rendered on the ground that it was not requested nor desired.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Salvage, § 28.]

3. SAME—AMOUNT OF AWARD.

A tug which towed a steamship worth $65,000 from a wharf when she was in danger of fire with apparently no other means of assistance at hand, the service lasting about 20 minutes, *held* entitled to a salvage award of $1,200.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Salvage, § 76.

Award in federal courts, see note to The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit for salvage.

Foley & Martin (William J. Martin, of counsel), for libelants.

Wallace, Butler & Brown (Howard S. Harrington, of counsel), for claimant.

CHATFIELD, District Judge. Services were rendered by the tug Henry Gillen and her crew to the steamer Ragnarok, upon the occasion of an exceedingly fierce and troublesome fire at Miller's plaster mill, on Newtown creek in this district, upon the morning of August 23, 1906. The Ragnarok is a steel freight steamer, worth some $65,000, and the claimant's stipulation for value in this action was fixed at $5,000. The Gillen was a tug of average capacity, and worth at the time perhaps some $18,000. At the time the fire broke out, the Ragnarok was lying at a wharf immediately adjacent to the building on fire. The channel to the wharf was such that the steamer could neither pro-

ceed to or away from the wharf under her own steam. A wind was blowing directly toward the face of the wharf, and carrying the flames out to and over the steamer. Under such circumstances, the Gillen left a tow with which she was proceeding up the river, made fast to the bow of the Ragnarok with the Gillen's own hawser, and in the course of some 20 minutes succeeded in removing the Ragnarok from the immediate point of danger. Inasmuch as the tide was running flood, the stern of the Ragnarok, then some distance below the fire, was not carried out into the stream an equal distance with the bow, the effect of the hawser attached to the bow of the vessel also increasing the tendency to swing. During the period in which the vessel was in tow of the tug, the captain of the Ragnarok, who was not on board at the time the fire broke out, succeeded in reaching his vessel, and after getting to the bridge, not only refused further assistance, but ordered the termination of the efforts of the Gillen. There is some dispute as to when the captain's orders were made known to the officers of the tug (inasmuch as the captain's first directions seem to have been given in Norwegian), but at about the time the Gillen left the bow of the Ragnarok and proceeded toward the stern, in order to draw the stern out even with the bow, the captain of the Ragnarok sent out a small boat to carry a line from the stern of the vessel to the opposite shore of Newtown creek. Some misunderstanding occurred in reference to this small boat, the men in the small boat at first attempting to give their line to the Gillen, and, under the orders of the captain, then leaving the Gillen and proceeding across the creek. In any event, the services of the Gillen ceased at this point, and the repudiation of the offer of further assistance resulted in her ceasing further efforts. The Gillen then backed away, and later returned to her tow. The Ragnarok was successfully warped across the stream by the stern line and by a second bow line subsequently led out by this same small boat. The assistence given by the Gillen was timely, valuable, and of a character which ordinarily should be rewarded. The value of those services and the amount of the remuneration, which in part should be based upon the idea of rewarding the Gillen for her prompt action, and for the willingness of her officers to assist in a situation of possible danger, would be the whole question for consideration in this case, if the claimant had not interposed two questions of law, which must be considered in reaching a determination.

The first of these objections is based upon a claim set forth in the libel that the Gillen rendered services to the Ragnarok, in towing the vessel across Newtown creek, and landing her along the wharf upon the opposite shore, upon which claim salvage was demanded to the extent of $5,000. It is undoubtedly true that, where a libelant shows such unconscionable greed and such inaccurate or false claims as to throw doubt upon the entire matter, such conduct may resolve a doubtful case in favor of the claimant, render it impossible to place credence in the story of the libelant, or even be a basis for holding that no compensation should be allowed for whatever services were rendered. The Barefoot, 1 Eng. Law and Eq. 661; The Dorothea Foster, Fed. Cas. No. 429; and The Chouteau, infra. But in the case at bar, the facts shown by the testimony concerning the transaction, the services ren-

dered, and the circumstances surrounding the filing of the libel, all indicate a proper case for the allowance of some compensation, and the exaggeration should have the effect merely of lessening the amount of the award.

The other proposition advanced by the claimant to defeat any recovery is that the libelants can recover no compensation, inasmuch as the assistance offered and extended was neither accepted nor desired by the captain of the Ragnarok. It appears from the testimony that the line which was passed by the Gillen was taken by some stevedores or common sailors, who were running around upon the deck of the vessel giving evidences of fright and panic. The captain, as has been stated before, at some time during the course of the towing, endeavored to repudiate the actions of these men, and ultimately terminated the efforts of the Gillen.

In the early case of New Harbor Protection Co. v. Steamer Charles P. Chouteau (D. C.) 5 Fed. 463, the court used the following language:

"If the master of a burning vessel prefers to allow her to burn rather than to permit outside parties to extinguish the flames, he may do so. He has a perfect right to decline any assistance that may be offered him; he should not be assisted against his will."

This broad proposition has, however, not been followed in the literal sense of the language quoted. In the case of Spreckels v. The State of California (D. C.) 45 Fed. 649, the court expressly states that the doctrine in the Chouteau Case is too broad. Certain other considerations in that case entered into a determination by the court that the libelant was entitled merely to a contract price for the services which it had rendered, and a prior refusal by the owner of the State of California to make use of the services of the tug Relief was held sufficient to defeat a claim for salvage for those services which were actually subsequently rendered by that tug, for the following reasons:

"But where the owners of a vessel in peril have taken all measures in their judgment necessary to insure her safety, and those measures are adequate, and all that prudence requires, other parties have no right to obtrude their services, and anticipate the employment of the means adopted by the owners, and then, if successful, claim a salvage recompense."

This principle of the Spreckels Case is also recognized in the case of The Bolivar v. The Chalmette, 1 Woods, 398, Fed. Cas. No. 1,611; The Pohatcong (D. C.) 77 Fed. 996; Baker v. The Tros, Fed. Cas. No. 783; and various others. It was further said in the case of the Pohatcong, supra, that the acceptance of a line by a seaman, after a refusal by the master, could not bind the ship. None of these cases, however (except the general statement in the Chouteau Case), meets the situation now under consideration. To say that services offered and rendered in a situation of danger, when no adequate or reasonable means of assistance or protection exist at the time (other than those offered by the vessel tendering assistance), can be repudiated and terminated when the immediate danger has passed, is to give to any owner or captain of a vessel in distress an opportunity to relieve himself from salvage charges, which would lead to utterly unjust results.

During the time that assistance is being rendered, the officers of a

vessel in distress are certainly at liberty to determine when the assistance rendered should be terminated, and such assistance cannot be forced upon them beyond that point, if the vessel in distress is then in a position where nothing but the property rights of the owners of the vessel are at stake. Upon reaching such a point, or at any time subsequent, if the officers of the vessel are able to think of some course of action which might have been taken in the emergency, and which if fortunately carried out might have resulted in saving their vessel, such an afterthought would almost always be interposed as a defense to a recovery for the assistance which had been rendered and acquiesced in up to that point, provided the courts sanction such a proposition.

Upon the record in this case it is impossible to determine what would have been the effect of an utter repudiation by the Ragnarok of the Gillen's services, and of a refusal to accept the hawser proffered by the Gillen. It is believed that the Gillen took a proper course, and rendered valuable assistance, at a time when such an offer should have been accepted and the proffered aid taken advantage of, with the expectation of paying therefor a suitable award. For the payment of this suitable award the Ragnarok is liable, and is bound by the action of the Gillen and of the men on the Ragnarok prior to the time when the captain determined that the services of the Gillen would not be required, and directed the Gillen to cease her efforts. As to the value of these services, considering that the time of performance was short, that no particular hardship was involved, and that the danger while imminent was not likely to be extreme, it would seem that an award of $1,200, to be distributed according to the usual rules, is sufficient, and the libelants may have a decree accordingly.