## THE GYPSY QUEEN.

## THE CITY OF PHILADELPHIA.

(District Court, S. D. Florida. November 15, 1922.)

Salvage ⊂⇒44—Oppressive suit for exorbitant amount will be dismissed.

    Libel by the owner of a gasoline fishing boat for salvage services rendered to a steamer, which had anchored after breaking her propeller, dismissed at libelant's costs, where the service involved no danger, and two other boats, which rendered similar service, claimed and were paid $15, each, but libelant, without making any demand, attached the steamer, required a bond of $18,000 for her release, and sought to grossly exaggerate the value of the services rendered.

In Admiralty. Suit for salvage by W. D. Hatch, owner of the gasoline yacht Gypsy Queen, against the steamship City of Philadelphia. Libel dismissed.

Samuel J. Barco, of Miami, Fla., for libelant.
E. J. L'Engle, of Jacksonville, Fla., for respondent.

CALL, District Judge. The passenger steamer City of Philadelphia left Wilmington for Tampa November 18, 1920, to assume the run from Tampa to St. Petersburg, with a coast pilot aboard and with no passengers or cargo aboard. Late in the afternoon or early part of the night of November 21st the steamer struck an obstruction, prob-

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ably a rock, and the engines were reversed, and she backed into the obstruction, breaking or bending her shoe, which had the effect of breaking two blades of her propeller and jamming the other blade, so that the engine could not work. The boat was then anchored in several fathoms of water, entirely afloat, and sent up distress signals. These signals were seen and responded to by a steamer further out and three small gasoline fishing boats lying inside the reef. The outside steamer sent a boat in with its mate to ascertain what was wanted.

Before the arrival of this boat the Gypsy Queen, of which the libelant was owner and operator, arrived alongside the city of Philadelphia, and at the request of the master took a message to the steamer lying further to sea, requesting that a radio message should be sent, asking for a tug to tow her to Key West. One of the other fishing boats towed the ship's boat back to the steamer, and the three boats remained the rest of the night, one behind the other, the first boat attached to the Philadelphia and the others attached to this one. In the morning of the 22d the three boats towed the Philadelphia between one-half and a mile further out to sea. Thereupon the Gypsy Queen left and proceeded to the fishing grounds; she being under charter to a gentleman aboard for a fishing trip. The other two boats remained until the steamship J. C. Donnell, the morning of the 22d, took the Philadelphia in tow, rendering such services as were required in passing lines, etc., from the Philadelphia to the Donnell. Each of these boats fixed their compensation at $15, which was paid before the voyage was resumed.

On December 7th the steamer was seized by the marshal under process dated November 29th at Tampa. Thereupon, pursuant to a telephone conversation between libelant's proctor and an agent of the claimant, a bond for $18,000 was required and given, in order to release the steamer from attachment, that she might go upon her regular run between Tampa and St. Petersburg.

Many pages of testimony were taken, but the above correctly states the conclusions to be drawn from it, and in addition the weather was clear, sea smooth, and moon shining brightly during the night, and the steamer was at anchor. The answer challenges the sufficiency of the libel by exceptions incorporated therein.

Unquestionably the libel violates the rules of this court in the particulars pointed out by the exceptions, and, had they been called up for a hearing before testimony was taken, would have been sustained but the testimony was taken and final hearing had and the whole matter submitted to the court, and I therefore proceed with the case as though no exceptions had been taken to the libel.

After considering the testimony in the case I am impressed that it makes a case for the condemnation of this court. The services rendered by the libelant were sought to be grossly exaggerated. The danger encountered by libelant was imaginary in great part if not wholly. It was sought to exaggerate the danger of the steamer. In fact I am impressed that the amounts demanded by and paid to the operators of the other two boats were ample and reasonable, and yet I find the libelant attaching a passenger steamer of considerable value,

without demand to be compensated for his service, and even requiring a bond for $18,000, and this where the libel is silent as to any stated amount claimed, as required by the rule of this court.

I feel that the libelant in this case has not exercised the good faith required of all salvors. I recognize the rule that allowances in salvage cases ought to be in such amounts as to encourage salvors in the saving of life and property even at dangers incurred by themselves; but, on the other hand, awards should not be made in such amounts as to excite the cupidity of persons, in order to take advantage of the misfortunes of ships in distress.

In cases where persons performing services to ships in distress allow their cupidity to overcome all considerations of equity and good conscience, the courts should visit upon such persons the penalties visited upon salvors who deal dishonestly with the salved property. It seems to me that the instant case is one to which this rule should be applied.

My judgment is that the libel be dismissed, at the cost of the libelant. It will be so ordered.