## THE KELVINBRAE.

(District Court, S. D. Georgia. July 9, 1923.)

Salvage ⬪31—Compensation for assisting in moving vessel granted on basis of quantum meruit.

A stevedore, who, with his force of negroes, assisted in moving a vessel whose propeller was out of commission from a slip, where there was danger of fire, by means of its donkey engine and winches, which took only a short time and involved him in no danger, though some discomfort, *held* to be awarded $100 approximately on basis of quantum meruit rather than as salvor.

In Admiralty. Libel by Jeremiah P. Foley and others against the steamship Kelvinbrae, her apparel, etc., and cargo. Decree for libelant named for part of the amount sued for.

Oliver & Oliver, of Savannah, Ga., for libelants.

Anderson, Cann & Cann, of Savannah, Ga., for claimants and respondents.

H. BARRETT, District Judge. The allegations and testimony of libelant exaggerate the imminence of the danger of the Kelvinbrae, the insufficiency and incompetence of her crew, the masterfulness of his own skill and services, and the danger to him in the rendition of such services. I do not think, however, that the exaggeration is sufficient to justify the denial of all claim by reason of the gross exaggeration of the value of the service. The Gypsy Queen (D. C.) 284 Fed. 607.

A fair visualization from the evidence is that the Kelvinbrae, a steel ship, was in slip No. 2 of the Seaboard Air Line Railway on the Savannah river, with its propeller out of commission, but with its donkey engine, which worked its winches, in commission. Between 2 and 3 o'clock on the afternoon of February 14, 1919, the Southern Chemical Company, some 300 to 600 feet to the southwest of the ship, caught fire, and the flames were rapidly fanned by a strong wind, blowing northeastwardly, so that the smoke and embers from the fire passed over the northern 75 feet of the Kelvinbrae. Some fire fell on the Kelvinbrae, and some of the walls near by, but it was promptly and easily extinguished. Libelant, together with his force of negroes, was stevedoring, in the employ of Strachan & Co.; libelant being paid a fixed salary and the negroes by the hour. At the inception of the fire libelant and his assistants closed and battened the hatches and were preparing to leave, when they were asked to assist in moving the vessel. This removal was accomplished by the libelant and his assistants placing the loop end of two ropes over posts on the walls; the other end being wrapped around steam winches on the vessel. With the working of the winches, the vessel was pulled out from the closed end of the slip, towards the Savannah river, and from the point thus reached the vessel was towed into the river and to a place of perfect safety. Libelant got on the vessel when it was taken in charge by the tug, and went with it to the Atlantic Coast Line wharves, lower down the river.

According to libelant's picture, the crew were in a frenzy of excitement, and incompetent to do the services necessary to save the ship, and his was the master mind in conceiving what was to be done and directing how it should be done. He fails to explain how any one who has at any time been associated with ships could be ignorant as to the moving of them by ropes around winches, or what particular skill it required for him or his assistants to place the loop of the rope over the posts, and he omits to make clear his being responsible for the use of steam to revolve the winches or the revolving of the winches themselves. Libelant attempts to prove, by himself and two witnesses, that he was in a place of peril while rendering such services. This view, I think, is not sustained, though it is probable that it might have been a place of some discomfort. The chances of the vessel's burning, even if it had not been moved, are remote; but the master himself considered it in sufficient peril to invoke the aid of libelant and his men to assist in the removal.

The service rendered was briefly done, requiring probably not more than half an hour, was without peril to the libelant, was without any requirement of skill or particular experience, and in my opinion justifies compensation approximately on a basis of quantum meruit and not as salvor. The negroes were paid time and half time for the overtime they served. The libelant libeled a ship, the cargo of which was estimated to be worth $1,000,000, and has exacted a bond of $4,000. He estimates the value of his services alone at $1,100. While the libelant declares that it is brought in behalf of the negroes, the testimony indicated that the libelant did not know where they are, and that he was not concerned in collecting any money for them. Giving libelant the benefit of some of the elements which would cause the payment to be above a strict quantum meruit, the award in his favor is fixed at $100.

Inasmuch as the claims for the negro assistants are not further pursued, and they were not represented in the hearing, no award is rendered in their favor.