**HIGGINS, Inc. v. THE TRI-STATE et al.**

**No. 114.**

United States District Court
S. D. Florida, Tampa Division.
March 14, 1951.

Montgomery, Fenner & Brown, New Orleans, La., Reeves, Allen & Dell, Tampa, Fla., for libelant.

Fowler, White, Gillén, Yancey & Humkey, Tampa, Fla., for claimant and respondent.

WHITEHURST, District Judge.

On September. 15, 1946, about 9:00 a.m., the motor vessel Tri-State, while en route from Cape Gracias, Nicaragua, to Tampa, Florida, with a cargo of 10,141 stems of green ·bananas, lost its propeller at a point about 97 miles north of Swan Island. About 7:00 p.m. September 16, 1946, the motor vessel Angele Higgins, which was en route from Bluefields, Nicaragua, to New Orleans, Louisiana, sighted and approached The Tri-State. The Angele Higgins took The Tri-State in tow about 9:00 p.m., September 16, and towed the same, at first towards New Orleans, then later towards Tampa, until about 5:00 p.m., September 18, at which time The Tri-State was delivered at sea to the motor vessels Desire and Micawber, which had been sent out from Tampa to intercept The Angele Higgins and to tow The Tri-State the remainder of the distance into Tampa.

Higgins, Inc., as owner of The Angele Higgins, individually and on behalf of the master and crew of the said vessel, filed a libel in rem against The Tri-State and in personam against Hamilton Brothers, Inc., as bareboat charterer of the said vessel and as owner of the said cargo of fresh bananas, claiming salvage for the service rendered by The Angele Higgins and its crew to The Tri-State and its cargo. The libel, among other things, alleged that the value of The Tri-State was $70,000; that the cargo of bananas saved and disposed of by Hamilton Brothers, Inc. was of the value of $25,000; that The Tri-State was in imminent danger of becoming a total loss when taken in tow by The Angele Higgins; that because of the high winds and rough sea there was considerable danger to The Angele Higgins and its valuable cargo; that the master of The Tri-State executed a document agreeing to have his vessel towed to New Orleans and to accept

any agreement for salvage made for and on behalf of The Angele Higgins; and that the services rendered by The Angele Higgins and its crew constituted salvage services of the value of $25,000.

Susie Mae Hamilton, as administratrix of the estate of Walling B. Hamilton, deceased, as claimant, and Hamilton Brothers, Inc., as respondent, filed a joint and several answer to the libel of Higgins, Inc. This answer, among other things, denied the value of the motor vessel Tri-State and its cargo as alleged by the libelant; denied any high winds or rough seas; denied any danger to The Tri-State or The Angele Higgins, or either of their cargoes prior to or during the time The Tri-State was being towed; alleged that the purported agreement for salvage dated September 16, 1946, referred to in the libel, and also a statement dated September 18, 1946, executed by the master, chief mate and chief engineer of The Tri-State, were executed under duress and through compulsion, and should be rescinded; and alleged that the service rendered to The Tri-State was towage, for which the claimant and respondent were ready and willing to pay a reasonable fee.

The suit was tried before me, and after considering the pleadings, evidence and arguments of counsel for the several parties, I hereby make the following findings of fact and conclusions of law:

### Findings of Fact

1. The Tri-State is of Honduran registry, is of the burden of 213 gross tons and 145 net tons, is about 105 feet in overall length, and has a beam of about 24 feet. In September, 1946, this vessel was of the value of $30,000, and was an asset of the estate of Walling B. Hamilton, deceased, of which Susie Mae Hamilton was administratrix.

2. In September, 1946, The Tri-State was under bareboat charter to the respondent, Hamilton Brothers, Inc., a Florida corporation having its principal office and place of business in Tampa, Florida. The respondent was engaged in the wholesale produce business and in connection therewith imported large quantities of fresh bananas from Central America.

3. In early September, 1946, the respondent purchased 10,141 stems of green bananas at Cape Gracias, Nicaragua, and dispatched The Tri-State to transport the same to Tampa, Florida.

4. At 6:30 p.m., September 13, 1946, The Tri-State, loaded with the said cargo of bananas, sailed from Cape Gracias for Tampa, via Swan Island. At 9:00 a.m., September 15, 1946, at latitude 19°00'N, longitude 84°29'W, a point approximately 97 miles north of Swan Island, The Tri-State lost its propeller. Thereafter, the vessel drifted in a westerly direction for approximately 43 miles until about 7:00 p.m., September 16. During this entire time The Tri-State was well provisioned and manned and was seaworthy in all respects, except for the loss of its propeller, and the weather was clear, there was a gentle easterly wind, and the sea was calm. At about 7:00 p.m., The Angele Higgins, while en route from Bluefields, Nicaragua, to New Orleans, Louisiana, sighted and approached The Tri-State. At this time the position of the vessel was latitude 19°00'N, longitude 85°12'W.

5. The Angele Higgins is owned by the libelant, Higgins, Inc., a Louisiana corporation having its principal office and place of business in New Orleans, Louisiana. This vessel is a steel cargo vessel of 1,444.49 gross tons and 766.48 net tons register. It is 243.1 feet in length, 42.8 feet in breadth, with a depth of 14.6 feet. In September, 1946, it was of the value of $800,000. On the voyage under discussion, The Angele Higgins was fully loaded with a cargo of mahogany logs destined for the libelant's plant near New Orleans.

6. The Angele Higgins stopped near The Tri-State. Captain Justo Garcia, master of The Tri-State, sent aboard The Angele Higgins and explained the difficulty to the latter's master, Captain Vincent Schnurrer. Captain Garcia requested Captain Schnurrer to tow The Tri-State to Cape San Antonio, Cuba, a port about 180 miles north of the then position of the two vessels. Compliance with this request would have required The Angele Higgins to deviate

about 11 miles from its course to New Orleans. It was Captain Garcia's plan to be towed to Cape San Antonio and to have The Angele Higgins radio Hamilton Brothers, Inc. to have other vessels come to Cape San Antonio to tow The Tri-State on to Tampa. Captain Schnurrer refused to tow The Tri-State to Cape San Antonio, and advised Captain Garcia that The Angele Higgins would tow The Tri-State to New Orleans or not at all. The Tri-State had a radio for receiving messages, but no facilities for sending messages. Further, The Tri-State had a perishable cargo and no means of propulsion. After considering these and other facts, Captain Garcia agreed for The Tri-State to be towed to New Orleans.

7. Thereupon, Captain Schnurrer required Captain Garcia to sign a certificate or purported salvage agreement (Libelant's Ex. No. 5), stating that The Tri-State had to be taken in tow to New Orleans by The Angele Higgins and would agree to accept the agreement which would be made for salvage upon arrival in New Orleans.

8. Preparations for the towage were executed by the personnel of both vessels. During the course of the same, the weather was good, the sea was calm, there was a gentle easterly wind and there was no danger to either vessel, its crew or cargo.

9. At about 9:15 p.m., September 16, The Angele Higgins began towing The Tri-State toward New Orleans. The towing cable was attached to a chain which circled the mast of The Tri-State. The voyage was uneventful until about 12:30 a.m., September 17, at which time the said chain parted and the towing cable pulled loose. The Angele Higgins put about and the towing cable was re-secured, this time solely by the members of the crew of The Tri-State, without any assistance from any members of the crew of The Angele Higgins. The conditions of the weather, sea and wind were the same as previously described, and there was no danger to the vessels or their respective crews or cargoes in this maneuver. Towing toward New Orleans was resumed at *about 3:00* a. m., September 17.

10. On the morning of September 18, pursuant to the instructions in a radiogram from Higgins, Inc., Captain Schnurrer had the officers and crew of The Angele Higgins sign an agreement to divide any salvage recovery equally with Higgins, Inc. (Libelant's Ex. No. 8).

The same radiogram also instructed Captain Schnurrer to get a statement from the master of The Tri-State as to the condition of the wind, weather and sea at the time The Tri-State was taken in tow. Pursuant to this instruction, Captain Schnurrer prepared a statement (Libelant's Ex. No. 6), purportedly showing the circumstances surrounding the towage of The Tri-State, including the condition of the wind, weather and sea. This statement exaggerated the condition of the wind and sea and the dangers to the vessels and their cargoes. About 1:30 p.m., September 18, Captain Schnurrer stopped The Angele Higgins and ordered the master, chief mate and chief engineer of The Tri-State to come aboard The Angele Higgins, which they did. Then Captain Schnurrer advised the three officers of The Tri-State that The Micawber and Desire were en route to meet them and to take over the tow of The Tri-State, but that he wanted the statement he had prepared signed by them before The Tri-State was surrendered. The officers of The Tri-State knew that certain of the recitations in the statement were exaggerated and that some even were false, but they signed the same in order to enable The Tri-State to be delivered to The Micawber and Desire, which had not yet arrived in sight. After signing the statement, The Tri-State's officers returned to their vessel and towing again was resumed.

11. About 6:00 p.m., September 18, The Micawber and Desire met The Angele Higgins and The Tri-State. The latter was surrendered to them, and they towed it the remaining distance to Tampa. The Angele Higgins after surrendering The Tri-State, immediately changed its course and headed for New Orleans, arriving there at about 3:22 a.m., September 20.

12. The Angele Higgins towed The Tri-State a total of 437 miles, deviated from its course a total distance of 131 miles, and

698

was delayed about 13 hours in arriving in New Orleans.

13. The total cost of operation of The Angele Higgins on the voyage in question averaged the sum of $546.13 per day, which sum is also a reasonable value or allowance per day for the towage of The Tri-State.

14. By reason of the loss of the propeller of The Tri-State, and the vessel's drifting and consequent delay in arriving in Tampa, its cargo of bananas had deteriorated and depreciated in value. Some of the bananas were overripe and of no value. Others were ripe or turning and could be sold, but not for the price which they would have brought had they arrived still green. The bananas, which had been purchased in Nicaragua for the sum of $7,178.85, were sold in Tampa for the sum of $7,348.87.

15. The towing service which was rendered by The Angele Higgins to The Tri-State was of value to the latter and its perishable cargo. The Tri-State, as a result of the loss of its propeller, while not in imminent danger, was nevertheless in distress, and its cargo of fresh bananas was in imminent danger of becoming a total loss.

16. At the time The Angele Higgins sighted and approached The Tri-State about 7:00 p. m., September 16, the latter was in the road, or sealane, between Cape Gracias and New Orleans. Although The Tri-State had drifted in a westerly direction from its original course between Swan Island and Cape San Antonio, it still had several well traveled sea roads to the west of its position at the time The Angele Higgins came upon it. One road was the road between Belize, British Honduras and Cape San Antonio. Another was the road between Puerta Caballos, Honduras and Cape San Antonio. A third was the road between Roatan, Honduras and Cape San Antonio. Had The Tri-State not been taken in tow by The Angele Higgins there is a reasonable probability that it would have been taken in tow by some other vessel traveling one of the described sea roads or would have drifted into waters shallow enough to anchor along the eastern

shore of Central America, but its cargo of bananas would have been a total loss.

### Conclusions of Law

█ I am of the opinion that the certificate or agreement for salvage dated September 16, 1946 (Libelant's Ex. No. 5), and the statement dated September 18, 1946 of the master, chief mate and chief engineer of The Tri-State purportedly reciting the condition of the weather, sea and wind during towage (Libelant's Ex. No. 6), were procured by the master of The Angele Higgins under circumstances amounting to moral compulsion. Magnolia Petroleum Co. v. National Oil Transport Co., 5 Cir., 286 F. 40. Accordingly, I have considered that they are invalid and unenforceable, and have given no weight to them.

█ The Tri-State was adrift on the high seas with a perishable cargo of green bananas, without means of propulsion or communication, and was in distress at the time it was taken in tow by The Angele Higgins. The assistance which was rendered by The Angele Higgins to The Tri-State under such circumstances and under the conditions of weather, sea and wind which prevailed was a salvage service, but of low order. Magnolia Petroleum Co. v. National Oil Transport Co., 5 Cir., supra; The Jean L. Somerville, 5 Cir., 286 F. 35; The Catalina, 5 Cir., 105 F. 633; Compagnie Commerciale de Transport, etc. v. Charente S. S. Co., 5 Cir., 60 F. 921.

█ The courts always have awarded inducements in the form of salvage awards for the saving of life and property at sea, but also consistently have declared any right to compensation for salvage forfeited or reduced in amount in cases where salvors have taken advantage or attempted to take advantage of the unfortunate by embezzlement of salved property, gross exaggerations of values and dangers, false representations of material matters, or other acts of misconduct. The Blaireau, 2 Cranch. 240, 6 U.S. 240, 2 L.Ed. 266; The Bello Corrunes, 6 Wheat. 152, 19 U.S. 152,

5 L.Ed. 229; The Lewis Brothers, D.C. Fla., 287 F. 143; The Gypsy Queen, D.C. Fla., 284 F. 607; The Howard, Superior Ct., Fla., Fed.Cas. No. 6,752A; Rodriguez v. Bagalini, 9 Cir., 17 F.2d 921; The Ragnarok, D.C.N.Y., 158 F. 694; The Bremen, D.C.N.Y., 111 F. 228, 239.

I have considered the contention of the claimant and respondents that any right to a salvage award in this suit was forfeited by the libelant and the officers and crew of The Angele Higgins because of their misconduct in connection with the gross exaggeration of the value of The Tri-State and its cargo and the dangers thereto, the condition of the weather, sea, and wind, the danger to The Angele Higgins, its crew and cargo, and the value of the services rendered by The Angele Higgins and its crew, and in connection with the misconduct of the master of The Angele Higgins in compelling the execution of the purported salvage agreement and the statement concerning the condition of the weather, sea and wind, and their contention that the most the libelant is entitled to receive in this suit is a reasonable allowance for towage.

■ Under the circumstances existing in this suit, I am of the opinion that the actions of the libelant and crew of The Angele Higgins were not such as to warrant a forfeiture of their right to a salvage award for the service rendered to The Tri-State and its cargo. The Angele Higgins towed The Tri-State from about 9:00 p. m., September 16, to about 6:00 p. m., September 18, a period of approximately two days, and was delayed 13 hours in arriving in New Orleans. The greatest allowance for towage would be the cost of operation of The Angele Higgins for two days, to wit, $1,092.26. The time lost by The Angele Higgins was of the value of $295.75. I am of the opinion that under the facts in this suit an award of double the towage rate plus the value of the time lost, an aggregate of $2,480.27 would be full and sufficient compensation. Magnolia Petroleum Co. v. National Oil Transport Co., 5 Cir., supra; United States v. Lester F. Alexander & Co., 5 Cir., 5 F.2d 230.

Let an appropriate decree be submitted, upon five days' notice, awarding the libelant, individually and on behalf of the master and crew of The Angele Higgins, salvage in the sum of $2,480.27, with interest from September 18, 1946, and costs.