TIDEWATER SALVAGE, INC., an Oregon Corporation, Plaintiff–Appellee,

v.

WEYERHAEUSER COMPANY, a Washington Corporation, Defendant–Appellant.

TIDEWATER SALVAGE, INC., an Oregon Corporation, Plaintiff–Appellant,

v.

WEYERHAEUSER COMPANY, a Washington Corporation, Defendant–Appellee.

Nos. 79–4104, 79–4135.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1980.

Decided Dec. 11, 1980.

William A. McDaniel, Coos Bay, Or., argued, for defendant–appellant; Paul L. Roess, Newhouse, Foss, Whitty & Roess, Coos Bay, Or., on brief.

Raymond J. Conboy, Pozzi, Wilson, Atchinson, Kahn & O'Leary, Portland, Or., for plaintiff–appellee.

Before HUG and REINHARDT, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge:

The district court awarded salvage to Tidewater Salvage, Inc. (Tidewater) for salving logs owned by Weyerhaeuser Company (Weyerhaeuser) and found floating in Coos Bay, a navigable water of the United States. It denied an award claimed by Tidewater for logs found stranded on the beaches of Coos Bay. Weyerhaeuser has appealed from the award of salvage as to the floating logs, and Tidewater has cross–appealed from the denial of salvage as to the logs found ashore. For reasons somewhat different from those advanced by the district court, we affirm the judgment.

Weyerhaeuser and others own lumber mills on the shore of Coos Bay. Weyerhaeuser stores its logs, all of which are branded, in the water near its mill. Despite

* The Honorable Russell E. Smith, Senior United States District Judge, District of Montana, sitting by designation.

its efforts, some logs become lost and drift unattended on Coos Bay. Weyerhaeuser maintains its own lost–log patrol and makes a substantial effort to recover its lost logs. Prior to the acts of salvage here, Weyerhaeuser emphatically notified Tidewater, a professional salvor, in writing that it did not want Tidewater's salvage service. The district court found that "it is generally difficult if not unreasonably impractical to determine ownership of a floating log prior to its recovery."

 Unattended logs floating in navigable waters are subject to the law of salvage.[1] An object may not be salved unless it is in marine peril,[2] but it is in marine peril if there is a reasonable apprehension that, in the absence of salvage, it will be lost.[3]

 The district court found that the floating logs were in marine peril. If Tidewater had not salved each log it found at the time it found it, there was some likelihood that that log might be lost, and certainly when Tidewater picked up a log it shortened by some unknown amount the time that the log remained a danger to navigation.[4] On the evidence, we are unable to say that the finding of marine peril was clearly erroneous.[5]

The real difficulty in this case arises out of the blanket refusal by Weyerhaeuser of Tidewater's salvage service. There are no cases in point. We have only the general considerations which shaped the formulation of the law of salvage to guide us in the formation of a governing rule. It was never thought that a person's property found on land could be charged with some sort of a lien in the absence of consent.[6] At sea, however, the law of salvage has long supplied a consent where none was given, and it did so for policy reasons. These reasons were expressed by Judge Sprague in *The Missouri*, 17 F.Cas. 484, 488 (D.C.Mass.1854) (No. 9,654), in this language:

> [P]ublic policy requires that such a promise of reward should be held out, in case of success, that all those in a situation and competent to render relief, shall be eager to do so, from the mere hope of gain; for example, that the sailor, who alone sees from the mast–head a vessel in distress, or the master, who descries her at a distance, with a telescope, shall not be tempted to pass her by, but shall have a prospect of pecuniary advantage, which may prompt his efforts.[7]

Notwithstanding this policy, the right of the owner to refuse salvage assistance has

**1.** *Whitmire v. Cobb*, 88 F. 91 (5th Cir. 1898); *Bywater v. A Raft of Piles*, 42 F. 917 (D.Wash. 1890).

**2.** *W. P. L. Services, Inc. v. Bisso Towboat Co.*, 598 F.2d 417 (5th Cir. 1979).

**3.** *Mississippi Valley Barge Line Co. v. Indian Towing Co.*, 232 F.2d 750 (5th Cir. 1956); *Basic Boats, Inc. v. United States*, 352 F.Supp. 44 (E.D.Va.1972); *Lancaster v. Smith*, 330 F.Supp. 65 (S.D.Ala.1971); *The Angie & Florence*, 77 F.Supp. 404 (D.Mass.1948). *See also D. L. Co. No. XX*, 205 F. 188 (W.D.Wash.1913).

**4.** We note the language in *The Henry R. Tilton*, 214 F. 165, 167 (D.Mass.1913); *The Agnes Manning*, 59 F. 481, 482 (E.D.N.Y.1894); and *The Anna*, 1 F.Cas. 928, 929 (E.D.N.Y.1872) (No. 398), *aff'd*, 1 F.Cas. 931 (C.D.N.Y.1873) (No. 401), indicating a relationship between the danger to navigation and the amount of the salvage award. We also note the language of *The Flora Rodgers*, 152 F. 286, 288–89 (D.S.C. 1907), indicating that the danger to navigation, apart from benefit to the owner, does not justify an award. In view of our disposition of this case, it is unnecessary to decide whether a

danger to navigation, apart from any danger to the floating object, may subject that object to the law of salvage. We express no opinion on that problem.

**5.** *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 7–8, 99 L.Ed. 20 (1954); *Mayview Corp. v. Rodstein*, 620 F.2d 1347 (9th Cir. 1980).

**6.** "On land the person who rushes in to save another's property from danger is an officious intermeddler, the volunteer whom even equity will not aid." G. Gilmore & C. Black, The Law of Admiralty 532 (2d ed. 1975).

**7.** This colorful language was quoted by Norris in The Law of Salvage § 233 at 371, and Norris was in turn quoted in *Star Towing Co. v. The Barge Org–6504*, 301 F.Supp. 819, 823 (E.D.La. 1969). The identical policy was expressed more prosaically at higher levels in *The Blackwall*, 77 U.S. 1, 14, 10 Wall 1, 14, 19 L.Ed. 870 (1869), and in *Mason v. Ship Blaireau*, 6 U.S. 240, 266, 2 Cranch 240, 2 L.Ed. 266 (1804).

long been imprinted on the law of salvage, at least so long as the refusal was prudent. Thus, in *Merritt & Chapman Derrick & Wrecking Co. v. United States*, 274 U.S. 611, 613, 47 S.Ct. 663, 664, 71 L.Ed. 1232 (1927), the Court said, "[S]alvage cannot be exacted for assistance forced upon a ship." [8]

Out of the broad considerations underlying the law of salvage we fashion this rule: An owner, acting as a prudent person, may refuse salvage assistance by completed communication to the prospective salvor at any time before the act of salvage.[9] A refusal of assistance, whether blanket or otherwise, is not completed, however, until the salvor, acting as a reasonable person, has determined, or could determine, the ownership of the object of salvage. We believe this rule to be consistent with the policy which permits a reward for voluntary endeavor without consent, and likewise to be consistent with the policy which permits the refusal.[10]

A holding that the blanket refusal of assistance was sufficient as to Weyerhaeuser logs found floating would obviously discourage salvage as to all floating logs; not until a given log was taken aboard could the salvor, as a practical matter, determine the ownership and know that, as to that log, assistance had been refused.

As applied to this case, there was no completed communication as to any one floating log until Tidewater, after taking the log aboard, discerned the Weyerhaeuser ownership. As to logs on the shore, the communication was completed when the salvor, prior to salvage, was able to see the Weyerhaeuser brand on the logs.

The judgment is affirmed.

---

**8.** *The Indian*, 159 F. 20 (5th Cir. 1908); *The Pohatcong*, 77 F. 996 (S.D.N.Y.1896); *The Bolivar v. The Chalmette*, 3 F.Cas. 818 (C.C.E.D. Tex.1872) (No. 1,611).

**9.** We have already noted that we are not resolving the question of whether status as a navigational hazard is, in and of itself, sufficient to invoke the law of salvage. *See* note 4 *supra.* Similarly, we need not decide whether salvage assistance may be refused where such refusal would result in an unwarranted hazard to navigation.

**10.** As indicated, we have found no controlling cases. Dictum found in *Spreckles v. California*, 45 F. 647, 649 (N.D.Cal.1890), and in *The Bolivar v. The Chalmette*, 3 F.Cas. 818, 818 (C.C.E. D.Tex.1872) (No. 1,611) is consistent with the view we have taken.