### THE NORD ALEXIS.

### THE ARTHUR KILL.

(Circuit Court of Appeals, Second Circuit. March 9, 1921.)

No. 135.

1. **Salvage ☞34—Where tug was unable to prevent steamer from being blown against another, resultant damages deductible from salvage.**

   Where tug, attempting to move to another pier a steamer which in a heavy wind had drifted to a ferry rack and there made fast to a pile, was unable to prevent the steamer from being driven against another steamer, the cost of injuries to such other steamer and also the cost of repairs to the steamer moved *held* deductible from salvage amounting to 5 per cent. of value of the steamer moved, although the tug, having exercised ordinary care and skill, would not be responsible to the claimant of the steamer moved, if his damages exceeded such sum, but she would be required to bear the cost of repairing her own injuries.

2. **Salvage ☞26—Benefit conferred is primary consideration.**

   The primary consideration in salvage cases is the amount of benefit conferred.

Appeal from the District Court of the United States for the Southern District of New York.

Libels by the Morse Dry Dock & Repair Company against the steamer Nord Alexis; by Felix Mouton against the steam tug Arthur Kill, and by the Koninklijke West Indische Maildienst against the Nord Alexis and the Arthur Kill, tried together. From the decree, Mouton, owner of the Nord Alexis, alone appeals. Reversed, with directions.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Frederick Pennell, both of New York City, of counsel), for appellant.

Macklin, Brown, Purdy & Van Wyck, of New York City (P. M. Brown, of New York City, of counsel), for appellee Morse Dry Dock & Repair Co.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Haight, Sandford & Smith, of New York City, for appellee Koninklijke West Indische Maildienst.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. The Morse Dry Dock & Repair Company, owner of the tug Arthur Kill, filed a libel against the steamer Nord Alexis to recover for salvage services. Felix Mouton, claimant of the Nord Alexis, filed a libel against the tug Arthur Kill to recover damages for injuries sustained by the steamer while in tow of the tug. Koninklijke West Indische Maildienst, owner of the steamer Prins Frederik Hendrik, filed its libel against the Nord Alexis and the Arthur Kill to recover for injuries sustained by her in collision with the Nord Alexis while in tow of the Arthur Kill.

By agreement these three cases were tried together, and the District Judge at the close of the trial delivered an oral opinion. He entered a decree: (1) Awarding 5 per cent. of the value of the Nord Alexis and her cargo to the Morse Dry Dock & Repair Company, $10,250 as salvage and $180, with interest, to pay for injuries to the Arthur Kill; (2) dismissing the libel of Mouton against the Arthur Kill, with costs; (3) awarding to the Koninklijke West Indische Maildienst $1,396.56 against the Nord Alexis for injuries sustained by the Prins Frederik Hendrik, and costs to the Morse Dry Dock & Repair Company against the Koninklijke West Indische Maildienst. Mouton, owner of the Nord Alexis, alone appeals.

[1] February 26, 1918, the Nord Alexis was lying to her port anchor on 45 fathoms of chain on Red Hook Flats, within a quarter to a half a mile of the Brooklyn shore. A storm arose from the northwest, and at about 9 a. m. the master paid out to 70 fathoms on his port anchor and let the starboard anchor go with 45 fathoms of chain. At about 9:40 a. m. the chain of the port anchor jumped the wildcat and broke the shackle in the chain locker, which connected it with the chain of the starboard anchor. The weight of the starboard anchor chain on the shackle prevented the port anchor from getting more chain, and the shackle broke under the strain. The port anchor and chain were thus lost, and the sudden strain on the starboard anchor chain caused it to jump the wildcat, and it was also lost, with all its chain. At this time the wind was blowing some 69 miles an hour, with a maximum velocity of 75 miles at 9:30. The steamer's engines could not be used, because a bearing had been broken the day before, taken ashore to be repaired, and had not been returned. All she could do was to let go the kedge anchor, of about 750 pounds. Under the effect of the wind from the northwest, the ebb tide running south, and the drag of the kedge anchor, the steamer began to drift broadside to the wind toward the ferry rack at the foot of Sixty-Eighth street. She blew for assistance.

In front of her was the tug Arthur Kill, with a line to the bow of the tug Asa W. Bangs, which tugs were pulling on a hawser to the bow of the steamer Rondo, ashore at the foot of Sixty-Second street. The Arthur Kill dropped her line to the tug Bangs, and the Bangs stopped, so as to let her hawser to the Rondo drop, and let the Nord Alexis drift

over it. The starboard quarter of the Nord Alexis struck the south side of the ferry rack at the foot of Sixty-Eighth street lightly, and those on board threw a line to persons on the rack, which was there made fast to a pile. The steamer then lay with her starboard quarter against the south side of the rack, angling out into the bay. The slip between Sixty-Eighth street and Sixty-Fourth street is about 400 feet wide, and is occupied by the Long Island Railroad Company float bridges. The only danger the steamer was exposed to was that of being carried by the wind into the slip and into collision with a car float which was lying on the north side of the ferry rack or with the float bridges of the railroad or with the Prins Frederik Hendrik lying alongside the pier at the north of the slip at the foot of Sixty-Fourth street, bow in.

In this situation the Arthur Kill came up on the steamer's starboard bow with a view to holding it up against the wind. The master of the steamer asked the tug to take him up to the south side of the pier at the foot of Sixty-Fourth street and lay him alongside of the Prins Frederik Hendrik. This the tug undertook to do. The steamer cut her line to the kedge anchor, the line to the pile on the south rack parted, and the tug with the best possible disposition pushed the steamer's bow to the end of Sixty-Fourth street and there made fast. She then went between the starboard side of the steamer and the Prins Frederik Hendrik, but was unable for lack of power to hold up the steamer against the wind, and fearing to be crushed between the two, backed out, and the starboard side of the steamer swung under the starboard counter of the Prins Frederik Hendrik, sustaining and inflicting damage.

The storm was violent, but not at all unprecedented. Two such storms are usual in the course of the year. There was some danger to the tug, though, as she was operating on the starboard side of the steamer, she was protected from the storm, and the time of her service was a little over half an hour.

[2] The primary consideration in salvage cases is the amount of benefit conferred. In this case there was none. The only danger to the steamer was that of being carried against the car float on the north side of the south rack, or against the float bridges, or against the Prins Frederik Hendrik. The Arthur Kill, though doing all she could, was unable to prevent the steamer from being driven against the Prins Frederik Hendrik. If we adopt the money award of the District Judge of 5 per cent. on the value of the steamer and cargo, we must at least deduct from it the sum the claimant has to pay to the Prins Frederik Hendrik for her injuries and the cost of repairing her own damage. The tug, having exercised ordinary care and skill, will not be responsible to the claimant of the Nord Alexis, if his damages are more than the sum of $10,250; but she must bear the cost of repairing her own injuries.

The decree is reversed, and the lower court directed to enter a decree in favor of the Morse Dry Dock & Repair Company for so much of $10,250 as may exceed the cost of the repairs to the Nord Alexis and

also the amount payable to the claimant of the Prins Frederik Hendrik; awarding to the claimant of the Prins Frederik Hendrik the amount of its damages, with interest and costs; awarding to the Morse Dry Dock & Repair Company against the claimant of the Prins Frederik Hendrik its costs in that suit; and dismissing the libel of the claimant of the Nord Alexis against the Morse Dry Dock & Repair Company, with costs.