## THE FLORENCE LUCKENBACH.

(District Court, E. D. Louisiana.   November 23, 1925.)

No. 17067.

**1. Salvage ☞26—Salvage awards are not made by fixed rule, and of necessity vary with circumstances of each case.**

Salvage awards are not made by fixed rule, and of necessity vary with circumstances of each case.

**2. Salvage ☞26—Circumstances to be considered in making award stated.**

Promptitude of salvors' services, their skill and energy, risk to which they expose themselves, value of property employed, and danger to which property was exposed, together with degree of success, value of property saved, and danger from which property was rescued, must be considered in making an award.

**3. Salvage ☞31—Salvage service rendered to ship while on fire is not measured in mere terms of cost of labor per hour.**

Salvage service rendered to ship while on fire is not to be measured in mere cost of labor per hour, and determination of compensation for salvage does not proceed on quantum meruit principles.

**4. Salvage ☞31—Amount and disposition of award for salvage stated.**

Where steamship valued at $550,000, including cargo and freight, was salvaged from fire with loss of $64,493.17 by three tugs, valued at $79,800, $150,000 and $55,000, $12,500 awarded to each of two tugs and $5,000 to another with one-fourth of said amounts divided among crew, and $150 to longshoreman assisting in salvage.

**5. Admiralty ☞57—Requirement of bond of 25 per cent. of total value of ship and cargo held proper.**

Where bond required by libelants for salvage was approximately 25 per cent. of total value of ship and cargo, it was not excessive, so as to make them liable for part of premium.

In Admiralty. Libel by the United States, as owner of the tug Barryton, for salvage against the steamship Florence Luckenbach and cargo, wherein interventions were filed by the Corona Coal Company, owner of

the tug Adler, and W. G. Coyle & Co., Inc., owner of the tug Ella Andrews. Decrees for libelant and interveners.

Edouard F. Henriques, Sp. Asst. U. S. Dist. Atty., of New Orleans, La.

Lemle, Moreno & Lemle, R. B. Montgomery, Spencer, Gidiere, Phelps & Dunbar, S. D. Marks, Jr., and Terriberry, Rice & Young, all of New Orleans, La., for defendant.

BURNS, District Judge. The United States of America, as owner of the tug Barryton, claims salvage of the steamship Florence Luckenbach. Interventions were filed by the Corona Coal Company, as owner of the tug Adler, and W. G. Coyle & Co., Inc., as owner of the tug Ella Andrews, likewise claiming salvage. Claims were also made on behalf of the crews of the tugs, and one by an individual, Walter P. Hilbert, a longshoreman, who alleges that he rendered assistance.

Answers were filed by the owners of the steamship Florence Luckenbach, admitting that services were rendered by these three tugs, their crews, and by Hilbert; but they claim that the salvage award should be made commensurate with the services actually rendered. The following facts, found from the credible testimony in the record, may be considered proven, and are taken as sufficient to justify the awards which will be made:

At about 8:30 p. m., September 15, 1922, a wooden wharf, underpinned with creosoted piling, and piled with merchandise more or less inflammable, took fire and was wholly consumed. The wharf, some 2,000 feet long, was located in front of and extending beyond the front of the Army Supply Base on the Mississippi river, abreast of the lower part of New Orleans. The Florence Luckenbach had been moored to that wharf for the purpose of loading cargo from about 2:30 p. m. of that day. Directly astern of the Florence Luckenbach another steamship, the Elsie Hugo Stinnes, was berthed, and this fact is important only to the extent that its position should be considered with reference to the possibility of maneuvering the Florence Luckenbach away from the wharf.

The Florence Luckenbach was due to have completed loading some time during the night and to leave the next morning. She was an oil burner. Steam pressure was kept up in her third boiler sufficient for donkey purposes. Her steering gear was down, the rods of same being disconnected to allow loading in the holds. Her hatches were open to receive cargo. Her crew were absent ashore,

9 F.(2d)—64

except for the master, chief engineer, a third assistant engineer, one oiler, one fireman, three mess boys, a purser, and a wireless operator, making a total of 10 aboard out of a full crew of 39.

The wharf fire started some distance above the stem of the Florence Luckenbach, but, owing to the prevalent wind, which was down the wharf and off shore toward the ship, and the inflammable character of the wharf, the fire traveled rapidly, both above and below it. As it neared the ship, the master and such of the crew as were aboard, realizing the danger, made effort to cast the ship loose from the wharf and called to their assistance the longshoreman, Hilbert, who otherwise would have left, along with all the other longshoremen engaged in loading the vessel. He responded, and by the combined exertions of the fragment of a crew and Hilbert the forward lines were first cast loose, the stern lines next, but the ship was in a perfectly helpless condition. A hasty, ineffectual effort was made to get up sufficient steam to move the vessel, while the above-described deck operations were in progess.

At this juncture the tug Barryton, which happened to be coming up the river at full speed, sighted the general conflagration, and, seeing the peril of the ships, proceeded with commendable promptitude directly to the aid of the Florence Luckenbach. The master and few men on deck were then in the after part of the vessel and hailed the Barryton for help, as they approached, urging the tug to hurry, in realization of danger of total destruction to the ship, which at that time was aflame all across her forward decks and superstructure, from the stem to the bridge, including the cargo in her open holds forward. There was fire, also, in her forecastle.

The Barryton took the line offered by the ship from off the stern port quarter; the master of the ship himself helping to heave it to the tug. As soon as it was made fast to the tug's bitts, the latter hastily pulled out; the ship moved a bit off shore and slightly down stream, but the line parted. The tug returned, the line made fast again, and the ship responded again, bringing its stern outward and abreast of the bow of the Elsie Hugo Stinnes. When in this position the line again parted.

This line belonged to the ship, and had been properly placed to the forward bitts of the Barryton, from whence it was taken back and made fast on the midship bitts. Even though the Barryton may have pulled too suddenly, or jerked, the delay caused here was due to no fault of the Barryton, in the

light of the tense excitement prevalent, affecting all who were there, and some in peril of their lives. The parting of these lines was due, in part, to their deficient condition, being either too short or of insufficient strength.

Then the tugboat made a third trial by going about to starboard, with head downstream, to the stern of the Florence Luckenbach, where she took the third line from the ship, whilst one of the tug's crew climbed aboard the ship and made fast one of the tug's steel towing hawsers. Upon this third trial she succeeded in pulling the Florence Luckenbach out, and thence downstream, until about abreast of the Elsie Hugo Stinnes, and from thence out into midstream, where, at the request of the master and others aboard the Florence Luckenbach, she held up the ship's stern toward the wind, putting the port bow as near to leeward as possible, in order that the flames might drive across the forward part of the ship over her port bow. Immediately a hose was passed from the Barryton across the stern port quarter of the ship, its pumps worked, and a stream of water was played from aft the bridge section upon the fire.

Notwithstanding considerable testimony on behalf of the Florence Luckenbach and owners, designed to minimize the value of this service, by attempting to show that the ship was not helpless, that she was able to operate and maneuver, and to the effect that she was able to move under her own power, the credible evidence against this contention prevails by a fair preponderance. The ship was in the utmost peril, because the tug Samson and such other craft as were at or near the fire were busy in other connections. No other tug was available, except the Barryton, to perform timely services, such as her predicament demanded, because at any period more than 10 or 15 minutes later approach from the river would have become as impossible as from land.

At or about the time the ship was being held out about or near midstream, and when she was at a safe distance from the fire ashore, but while she was, because of the fire raging aboard, in imminent danger of destruction, the tugs Adler and Ella Andrews arrived. The Adler first made an attempt to take position on her port bow, but was compelled to recede because of the flames, which threatened to sweep the tug's superstructure on approach there. She rounded the ship and took position near the starboard bow, where she aided the Barryton in holding the ship with her stem to the leeward, so that the flames might not carry further aft than the bridge, which was then aflame.

The tug Ella Andrews, arriving at the same time, being a smaller tug, with lower superstructure, headed in at the ship's port bow, at the point which the Adler had been compelled to abandon. These tugs had come from up the river, from whence they had heard the distress signals being blown by other river craft, and could see the smoke and glare of the fire that was visible for miles.

The Adler had been lying with steam up on the opposite shore, above Algiers Point. She cast off immediately, fully manned, and proceeded at full speed down the river, preparing her hose and pumps for immediate service throwing water. As soon as she neared the Florence Luckenbach, she began playing a 2-inch stream of water from her monitor into the forecastle of the ship through its ports. As her nose pressed against the hull of the ship at or about its forward well deck on the starboard side, and whilst the 2-inch stream was playing into the forecastle, she brought into play a 2½-inch fire hose, and made fast a wire cable to the ship, to be the more able to control her movements. A tug hand made fast the wire cable aboard ship. He could only proceed aboard on the ship's hot deck when the flames were subdued, aided by a stream of water playing on the deck about his feet.

The Ella Andrews left her wharf fully manned and proceeded directly to the fire, taking the position above stated. Her hose was manned by two men, and from her pilot house played the stream into the forecastle and across the forward decks and bridge of the Florence Luckenbach. She arrived approximately at the same time the Adler did.

The three tugs, from the positions stated, successfully fought the fire, prevented its extension aft beyond the bridge, and as soon as the decks were cooled sufficiently the ship was brought to anchor at about 9:30 p. m., and the crews of the several tugs, together with the fractional part of the crew of the ship then aboard, finally subdued the fire in the holds and extinguished it entirely. These operations extended through about 2 or 2½ hours.

[1] Salvage awards are not made by fixed rule, and of necessity they vary with the circumstances of each case. The situation from which the Florence Luckenbach was rescued was one of extreme peril, not only because the ship astern prevented her drifting off when cast loose, or because she could not get up sufficient steam in time to operate under her own power, or maneuver because her

steering gear was disconnected, but because of the absence of the major part of her crew, and the inaccessibility of her fire-fighting apparatus, occasioned by the fire aboard. These combined circumstances were such that, even if she had been capable of moving from the wharf, total destruction, except for outside help, was certain. She was saved by the labor of the tugs, their crews, and Hilbert.

[2] The promptitude of these salvors' services, their skill and energy, and the risk to which they exposed themselves, the value of the property employed by the salvors in rendering the services, and the danger to which this property was exposed, together with the degree of success achieved by them, the value of the property saved, and the danger from which this property was rescued, must be considered in making an award.

[3] The fact that the maneuvering and fire-fighting combined was concluded by somewhere between 10:30 p. m. and 11 p. m., a period of two hours or a little longer, is to be considered, of course; but salvage service rendered under the circumstances found here is not to be measured in mere terms of cost per labor hour, as would be the case in connection with ordinary employment. The determination of compensation for salvage does not proceed on quantum meruit principles. The Blackwall, 10 Wall. 1, 19 L. Ed. 870; The Arthur Kill, 273 F. 160 (C. C. A. 2d Ct.); The Livietta, 242 F. 195, 155 C. C. A. 35 (C. C. A. 5th Ct.).

[4] The valuation of ship and cargo before the fire was:

Vessel .......................... $109,458.30
Cargo .......................... 384,041.70
Freight ........................ 56,500.00

Making a total of............... $550,000.00

The valuation after the fire was:

Vessel ........................ $ 98,465.13
Cargo .......................... 330,541.70
Freight ........................ 56,500.00

—making a total value of saved property amounting to $485,506.83. The value of property actually destroyed was $64,493.17.

The value of the tug Barryton was $79,800 at the time of the service. The value of the tug Adler was disputed, but its cost price was $250,000, and at a fair market value was not worth less than $150,000. The value of the Ella Andrews was $55,000.

The amount of the award will be $30,150. As between the Barryton and Adler, the value of the towage service of the first was greater than that of the latter. On the other hand, the fire-fighting service of the Adler and her greater value intrinsically may be fairly said to equalize their several shares in the award. The value of the Ella Andrews and her inferior service, by comparison with the first two tugs, though very valuable in itself, do not justify an equal share in the award.

The award will be divided accordingly: To the tug Barryton and her owners, $12,500, less one-fourth thereof to be divided among her crew in proportion to their respective salaries at the time of the salvage service. To the tug Adler and her owners, $12,500, less one-fourth thereof to be divided among her crew in proportion to their respective salaries at the time of the salvage service. To the tug Ella Andrews and her owners, $5,000, less one-fourth thereof to be divided among her crew in proportion to their respective salaries at the time of the salvage service. To Walter P. Hilbert, longshoreman, the sum of $150.

[5] There was a contention on behalf of claimant that the libelants required excessive bond, and that they should be condemned to pay part of the premium. Since the bond was approximately 25 per cent. of the total value of the ship and cargo, this contention cannot be sustained.

Decrees may be drawn accordingly in favor of the libelants and interveners, including the members of the several tug crews individually. Costs to follow decrees.