## THE FLOWER CITY.

*(District Court, N. D. New York.  1883.)*

1. SALVAGE—AWARDS FOR PROMPT AND ABLE SERVICE.

    It is the growing policy of the admiralty, and especially where the salved vessel is derelict, to make liberal awards for prompt and gallant service; amounting, in many instances, to more than half of the net value of the property saved.

2. SAME—ADJUSTMENT OF CLAIMS OTHER THAN THOSE OF THE LIBELANT.

    In an action for salvage, where there are other claims than those of the libelant growing out of the same occurrence, and where it is obviously for the advantage of all concerned, admiralty courts, in granting an award, will extend it so as to adjust and settle all such other claims by one and the same suit.

In Admiralty.

*B. H. Williams,* for libelant.

*S. D. Bentley,* for claimant.

COXE, J.  The Collins Bay Rafting & Forwarding Company, the libelant in this action, is a Canadian corporation engaged in towing, wrecking, and relieving distressed vessels upon the river St. Lawrence and the lakes.  At about 2 o'clock on the morning of August 6, 1881, the Flower City, a steamer of about 217 tons burden, was discovered floating down the river, below Clayton, derelict, and wrapped in flames.  The steamer was hopelessly on fire; every effort to save her had been exhausted.  Fear lest the flames should destroy the buildings of the town had impelled the citizens to cut her loose from her moorings.  The crew then abandoned her, and, with nothing but the wind and the current to direct her course, she floated down the river, doomed, apparently, to inevitable destruction.  All who saw her at this time, the crew included, supposed that she would burn to the water's edge and sink, a worthless wreck.

In these circumstances, the libelant's tug, McArthur, which happened to be lying, with steam up, a mile or so distant, came to the rescue.  She was admirably manned and equipped for such service, and after four or five hours of arduous and incessant exertion on the

part of the master and crew, involving skill, and attended with danger to both life and property, the fire, if not completely subdued, was brought under absolute control. The steamer was towed back to Clayton, moored at the dock, and surrendered to her master. In her then condition she was worth $4,000. The tug was valued at $17,000 or $18,000.

That many of the conditions upon which the courts base liberal rewards in salvage cases are presented here, cannot, I think be successfully disputed. Viewed in the light of precedent, the libelant certainly presents a very meritorious demand. The steamer was derelict, and on fire,—on fire at night,—and at a point where no assistance could reasonably be expected.

It cannot, as is frequently the case, be contended that the steamer would, in any event, have been saved. The tug was the only vessel that could come to her assistance. The work was well and bravely done. There was actual danger from fire, and apprehended danger from escaping steam and bursting boilers. The success was positive, and $4,000 of property was rescued from certain destruction. It is the growing policy of the admiralty, and especially where the salved vessel is derelict, to make liberal awards for prompt and gallant service; amounting, in many instances, to more than half of the net value of the property saved.

Having in view all the circumstances of this case, I am of the opinion that, for the whole service rendered, $1,400 would be a fair and reasonable allowance. To award much less would be to ignore the well-settled principles upon which remuneration for salvage service depends.

Although judgment is demanded simply for the amount due to the libelant, it is obviously for the advantage of all concerned that every claim growing out of this occurrence should be adjusted and settled in the present suit.

Under the liberal and elastic system of pleading and procedure in the admiralty courts, no valid reason is suggested why this cannot be accomplished. The libel should be amended by bringing in the master and crew of the steam-tug, and the above amount should then be divided among all interested parties.

As before stated, relieving disabled vessels was part of the business of the libelant; the McArthur was fitted up for that purpose, and, presumably, the crew were employed with reference to it. These considerations, together with others before adverted to, entitle the libelant to an award of $1,000. Of the remaining $400, the master

should have $100, the mate, $75, and the balance should be divided among the other members of the crew in proportion to the rate of their wages, respectively. Unless the amounts are agreed upon and full releases filed within 30 days, a commissioner may be appointed to ascertain and report the names and wages of the crew, and the sum due to each.

Upon the payment of the amount above stated—$1,400—into court, together with the libelant's costs,—which are not to include the costs incurred by reason of the amendment or reference above suggested,—all liens and claims against the libeled steamer are to be discharged.

See *The Sandringham,* 10 FED. REP. 556, and note, 584.