## THE SAN CRISTOBAL.

### (Circuit Court of Appeals, Fifth Circuit. March 2, 1916.)

### No. 2732.

SALVAGE ☞10—RIGHT TO COMPENSATION—INDIRECT SERVICES.

Libelant's tugs rendered valuable service in preventing the spread of a fire which consumed a lumber mill. At the end of a pier extending from the mill into the river, and 75 feet therefrom, was a dry dock, on which was respondent's steamship. Neither the dock nor the vessel was injured by the fire, nor were any of the services of the tugs rendered to them. *Held*, that the vessel was not liable for salvage services.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 18–20; Dec. Dig. ☞10.]

Appeal from the District Court of the United States for the Southern District of Alabama; Harry T. Toulmin, Judge.

Suit in admiralty for salvage by the Mobile Towing & Wrecking Company against the steamship San Cristobal. Decree for respondent (215 Fed. 615), and libelant appeals. Affirmed.

Palmer Pillans, of Mobile, Ala., for appellant.

Gregory L. Smith and Harry T. Smith, both of Mobile, Ala., for appellee.

Before PARDEE and WALKER, Circuit Judges, and FOSTER, District Judge.

PARDEE, Circuit Judge. The appellant filed a libel claiming salvage against the steamship San Cristobal for volunteer services rendered in extinguishing a fire at a sawmill on Pinto Island in the port of Mobile; the San Cristobal being then in a dry dock 75 feet away. The said dock "was raised clear of the water, and the said vessel was in there for the purpose of repair, and had her tail shaft out and was absolutely helpless to protect herself against the risk or danger of fire from without." On exceptions, the District Court dismissed the libel, on the ground that, so far as the San Cristobal was concerned, the services were indirect.

We concur in the opinion and conclusion of Judge Toulmin, found in the transcript and reported in 215 Fed. 615. In support of his conclusion the judge could have cited The H. M. Hayes, P. C. Lush. Ad. R. 360, 5 N. S. Law Times' R. 37, 39, to wit:

"Where a vessel at anchor was in danger of being run into by a vessel which was drifting, and a steam tug made fast to the vessel adrift, thus avoiding a collision, it was held that the service was too indirectly rendered to the vessel at anchor to render her liable for salvage."

The following cases relied upon by the appellant are interesting, but in each the services rendered were direct:

In The Stormcock v. Van Dyke, 5 Asp. Maritime Cases, 19, the services were rendered to the Van Dyke by the Stormcock in pulling away and separating the Queen of Scots, then in collision and entangled with the Van Dyke; the Queen of Scots at the time having

---

already cut with her prow through the hull of the Van Dyke's quarter above the water line, and each jump was cutting closer and closer to the water.

In The Neshaminy, 228 Fed. 286, —— C. C. A. ——, the barge lying in a dock was but 10 feet from the engine house on fire, and the dock itself was on fire. The court found that "from the nature, extent, and duration of the fire and its proximity to the barge the danger to the barge was not only to be apprehended, but was actually present," and that the claim was for services rendered the vessel actually in danger, and not a claim based on an indirect benefit incidentally derived from the services rendered to another.

We may note that even direct services rendered in time of danger have not always been recognized as salvage services.

"A steamboat for services performed in towing other steamboats from positions where they were moored at the wharf, and thus preventing them from coming in contact with a steamboat on fire descending the river, is entitled to a compensation for towage, and not to a compensation in the nature of salvage." Stephens et al. v. The Steamboats S. W. Downs and The Storm, 1 Newb. Ad. 458, Fed. Cas. No. 13,411.

The above is the syllabus of the case. The facts were that between the hours of 10 and 11 o'clock in the day the steamboat John Swayze took fire while descending the Mississippi river, opposite Lafayette, and drifted down the current. While enveloped in flames she passed very near the sterns of the many steamboats then lying at the wharf of New Orleans at the foot of Canal and Customhouse streets. Great consternation and alarm were created among those having charge of the boats, and the utmost anxiety was manifested to prevent them from coming in contact with the burning boat. The steamboat Eliza was about to leave port on her voyage up the river and had already raised steam. She first towed out the steamboat Eclipse, and afterwards performed the same service for the Downs and the Storm at the request of those having charge of those boats at the time. The court said (Judge McCaleb):

"While I do not feel myself called upon to decide that this is not a case of· marine salvage, I have no hesitation in saying that it is a case where the services performed should entitle the libelants to little more than would be allowed on a quantum meruit, for work and labor performed."

The decree appealed from is affirmed.