## MERRITT & CHAPMAN DERRICK & WRECKING COMPANY *v.* UNITED STATES.

ERROR TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 214.   Argued March 10, 1927.—Decided May 31, 1927.

The aid or benefit to a ship resulting incidentally and indirectly from efforts to extinguish fire on a nearby wharf, put forth for the purpose of saving property not related to her, will not sustain a claim for salvage in the absence of any request for or acceptance of the service on her behalf.  P. 613.

Affirmed.

Error to a decree of the District Court dismissing the petition in a suit for salvage brought against the United States under the Tucker Act.

*Mr. Dudley C. Smith*, with whom *Mr. O. D. Duncan* was on the brief, for plaintiff in error.

*Assistant Attorney General Farnum*, with whom *Solicitor General Mitchell* was on the brief, for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Plaintiff in error sued under the Tucker Act, c. 359, 24 Stat. 505, upon a claim for salvage on account of service alleged to have been rendered the Steamship Leviathan owned by the defendant in error.  *United States* v. *Cornell Steamboat Co.*, 202 U. S. 184, 189.   On defendant's motion the court, May 7, 1925, dismissed the petition on the ground that it fails to state a cause of action.   The case is here on writ of error to that court.   *J. Homer Fritch, Inc.* v. *United States*, 248 U. S. 458.

The petition alleges the following.  August 24–25, 1921, at Hoboken, there was a fierce and extensive fire on

Pier 5. The Leviathan lay bow in at the south side of Pier 4. She could not be towed out. She had only a skeleton crew, and it would have required a large number to man her and many hours of preparation to get up sufficient steam and move her by means of her own engines. The fire started at half after six in the evening and was not extinguished until seven in the morning. A part of the time it covered the whole length of Pier 5, the bulkhead and adjacent houses. The wind was from the south and tended to carry the fire across the slip and onto the Leviathan. Her port side was considerably scorched, and several times fire broke out on her superstructure. Ammunition was stored in a building near the bulkhead, and the possibility of an explosion added to the danger. Plaintiff's steamers Commissioner and Chapman Brothers were powerful boats, specially built, equipped and manned for salvage and fire fighting service. The former from seven until half after nine in the evening and the latter from about seven in the evening until seven in the morning continuously fought the fire. They played heavy streams of water on the burning pier where the fire threatened the Leviathan. And, by way of conclusion, it is stated that " The service was a direct aid and benefit to the steamer Leviathan in preventing the spread of flames from Pier 5 to that vessel, and had it not been for the said service great damage to, if not total loss of, the said steamship would have resulted." Limiting the general statement by the specific, in accordance with the context, (*United States* v. *Union Pacific R. Co.*, 169 Fed. 65, 67, and cases cited) the substance of the allegation is that plaintiff in error, by preventing the spread of the fire from the pier to the Leviathan, rendered her direct aid and benefit.

There is no claim that the Leviathan, or any one in her behalf, requested or accepted assistance from plaintiff in

error, or that its fireboats played any water on that vessel or did anything to extinguish fire thereon or to give her any assistance other than that involved in fighting the fire on and about Pier 5. The distance between the Leviathan and that fire is not stated, and there is nothing to indicate that she did not have adequate protection from other sources. Indeed, the circumstances disclosed by the petition rather tend to show that she did not need any assistance from plaintiff in error.

While salvage cannot be exacted for assistance forced upon a ship (*The Bolivar* v. *The Chalmette,* 1 Woods C. C. 397), her request for or express acceptance of the service is not always essential to the validity of the claim. It is enough if under the circumstances any prudent man would have accepted. *The Annapolis,* (In the Privy Council), Lushington 355, 375. Plaintiff in error claims as a volunteer salvor going at his own risk to the assistance of the ship on the chance of reward in case of success, and not as one employed rendering service for pay according to his effort or the terms of his contract. *The Sabine,* 101 U. S. 384, 390. It did not communicate with or enter into the service of the Leviathan. Its fireboats did not put water upon her. The fires that started on her were put out by other means. All effort of plaintiff in error was put forth directly for the purpose of extinguishing fire at and about Pier 5 and to save property not at all related to the Leviathan. The elimination of that fire contributed mediately to her safety. But, whatever the aid or benefit resulting to her, it was incidental and indirect for which, in the absence of request for or acceptance of the service, a claim for salvage cannot be sustained. *The Annapolis, supra; The City of Atlanta,* 56 Fed. 252, 254; *The San Cristobal,* 215 Fed. 615; 230 Fed. 599.

*Judgment affirmed.*