**THE SNOW MAIDEN.**

Lawrence H. POWERS

v.

Frederick T. WHITE.

No. 56–20.

United States District Court
D. Massachusetts.

Sept. 23, 1957.

Andre R. Sigourney, Badger, Pratt, Doyle & Badger, Boston, Mass., for plaintiff.

Thomas H. Walsh, Boston, Mass., for defendant.

**WYZANSKI, District Judge.**

This is a libel seeking an award for alleged salvage services voluntarily rendered to The Snow Maiden.

While under the command of her owner, Frederick T. White, the schooner Snow Maiden went aground on Brown's Bank, near Plymouth Harbor, during a storm on Saturday, November 19, 1955. The Coast Guard, in the presence of some private persons, and to the knowledge of many people in the community, removed on that Saturday night four members of the crew. At 4 a. m. on Sunday, White and the other crew members left The Snow Maiden without any intention of returning. White, by 3 that afternoon, engaged George A. Davis, the owner and operator of a well-known yard in Plymouth, to do all necessary work to salve the vessel. By Monday morning the schooner had broken up, leaving on the sandy beach the engine and certain other gear.

At 7 that Monday morning, Lawrence H. Powers, a fisherman, headed out to sea to fish. When he started he knew that there had been a wreck, but he did not inquire about who was the owner or what, if any, arrangement he had made for salvage. One of his fishing crew spotted through binoculars the engine on the beach. Salt water and sand were causing the engine and gear to deteriorate. There was some risk that they might become lost in the sand or sea.

After three hours work Powers and his crew salved the engine, a gas driven pump, some batteries, and a fire extinguisher. The then value of the engine was about $400, as is persuasively shown both by a contemporaneous, disinterested expert appraisal of the Plymouth shipyard man, George A. Davis, and by the net proceeds realized when the engine was later sold. The then value of the pump was $15, and the other items were of no value.

Powers brought the salved property to Plymouth Harbor at once. But he did not and would not turn it over unconditionally to White, who was at the dock. He claimed one thousand dollars for his services, and declined to surrender the property before payment. White refused to pay, and pointed out that he had not authorized Powers' action and that his demand was so exorbitant as to be "crazy". Local Harbor and police authorities (none of whom was quite sure of the law,) suggested that Powers should at least turn the engine over to Davis at once for immediate oiling, stripping down and reconditioning, so that further deterioration would not occur. Powers did this. Some weeks later, after consulting counsel, Powers told Davis to give the engine to White; and this was done.

With White's permission Powers went back to the scene of the wreck and salved the mast. In salvaging this spar, Powers damaged his vessel in the amount of $30 and used up wire worth $100. But the mast itself proved to be worth only $50.

From the foregoing facts, this Court concludes that Powers was warranted in volunteering his services as a salvor. Two alternative paths reach that result.

The first is that White had abandoned the vessel, and left her a derelict. The Barque Island City, 1 Black 121, 66 U.S. 121, 128, 17 L.Ed. 70. The Gerbeviller, D.C.Mass., 34 F.2d 825, 826. The other is that, in the words of Justice Butler in Merritt & Chapman Derrick & Wrecking Co. v. United States, 274 U.S. 611, 613, 47 S.Ct. 663, 664, 71 L.Ed. 1232, "any prudent man would have accepted" the services of Powers as a salvor, since the engine and gear might have disappeared before Davis could reach them. [See the explanation of The Esperance, 1 Dodson 46 given by Justice Miller in The Laura, 14 Wall. 336, 343–344, 20 L.Ed. 813].

■ Powers is not debarred from presenting his claim merely because White had previously engaged Davis to effect the salvage. It is, of course, well recognized that if there is a derelict or if there is a perilous situation, a would-be salvor need not await a request or invitation from the owner or master. Merritt & Chapman Derrick & Wrecking Co. v. United States, supra. The Annapolis, Lushington 355, 375. But it may be said that this rule does not apply where the owner has given a third person a contract to perform the salvage.

■ We may assume that (1) if the volunteer knows of the contract, (2) if the safety of men's lives is not at stake [See Kennedy, The Law of Civil Salvage, (3rd ed., 1936), p. 218, Gilmore & Black, The Law of Admiralty, p. 446, note 12], and (3) if the volunteer does not reasonably believe that the contractor will arrive too late to rescue the property, [Cf. The Esperance, supra], the volunteer must respect the ship's or owner's first choice. This is because usually the volunteer's "assistance" cannot be "forced upon a ship". [Justice Butler's interpretation of The Bolivar v. The Chalmette, C.C., Fed.Cas.No.1,611, 1 Woods 397, given in Merritt & Chapman Derrick & Wrecking Co. v. United States, 274 U.S. 611, 613, 47 S.Ct. 663, 71 L.Ed. 1232.] The volunteer's right to remuneration would be lost by what is in effect an "express and reasonable prohibi-

tion on the part of the vessel to which services were rendered". [See the international rule laid down by Article 3 of The Salvage Convention, (37 Stat. 1671, 6 Benedict, Admiralty, (6th Ed.) p. 201) which, though not binding in this case is suggestive of what would in any event be the maritime rule. (See Gilmore & Black, The Law of Admiralty, pp. 444–445.).]

We may also assume that the volunteer would be debarred in most cases if he shut his ears so as not to learn whether the owner had made a salvage contract. For in many cases to refuse to learn the obvious, would lead a court to conclude that the volunteer failed to show that the vessel was in peril. Incidentally, this conclusion could be reached whether a court took as its standard of peril, the way the situation would look to a prudent person in the position of the vessel owner [See the previous citations of Justice Butler's opinion in Merritt & Chapman Co.], or the way the situation would look to a prudent person in the position of the volunteer. [See Hincks, C. J. in Lambros Seaplane Base v. The Batory, 2d Cir., 215 F.2d 228, 233. "To be entitled to salvage, it is, of course, necessary for the salvor to prove a reasonable apprehension that the salved property was in peril"]

■ However, these assumptions are beside the mark left by the facts in this case. Here the evidence shows that the engine and the gear were in danger of being lost before Davis arrived to perform his contract. Hence there was a peril, and the contract did not preclude Powers from rendering assistance. [Cf. The Esperance, above.]

We now come to the more difficult question whether Powers is debarred because when he brought the engine to port he refused to surrender it to White unless given $1,000. That the amount sought was exorbitant is not determinative. What is significant is that Powers wrongly although ignorantly, claimed a lien on the engine.

A salvor has no lien for his services. The maritime law gives him none. Nor does Mass.G.L.(Ter.Ed.) c. 255, § 14, inasmuch as the shipowner has not made an express or implied contract for the salvor's services.

Powers obligation after salving property was to "place it in a place of safety in which it would be available to the owner, subject to a libel *in rem* for salvage if desired." Lambros Seaplane Base v. The Batory, 2d Cir., 215 F.2d 228, 234. Powers' continued retention of the engine after White made demand for it was a plain case of conversion. Jackson v. Innes, 231 Mass. 558, 121 N.E. 489. Cf. Marshall Vessels, Inc., v. Wright, 331 Mass. 487, 489, 120 N.E.2d 286. But Powers, having acted in a bona fide but mistaken belief that he had a valid lien, had not committed larceny or any like crime. Thus his wrong while not venial was not vicious.

The general rule is that where a salvor is guilty of willful misconduct or bad faith, a court, depending on the precise circumstances, will deny or diminish the salvage award. The Barque Island City, 1 Black 121 66 U.S. 121, 17 L.Ed. 70; Danner v. United States, D.C.S.D.N.Y., 99 F.Supp. 880; Norris, Misconduct of Salvors, 18 Brooklyn Law Rev. 247; Gilmore & Black, The Law of Admiralty pp. 459–461.

Taking into account the nature of Powers' misconduct, the $400 value of the engine and $15 value of the pump, the time spent by the salvor, the small risks he ran, and other factors which are appropriate under the rule in The Blackwall, 10 Wall. 1, 77 U.S. 1, 14, 19 L.Ed. 870, and authorities cited in Gilmore & Black pp. 461–464, this Court awards to libellant for his first salvage of the engine and gear $100. For the recovery of the mast, a result of the second salvage expedition, this Court awards libellant a further $40. No interest for the period before the decree shall be payable.

Decree for libellant for $140.