159 F.Supp. 30 (1958)
THE SNOW MAIDEN.
Lawrence H. POWERS
v.
Frederick T. WHITE.
No. 56-20.
United States District Court D. Massachusetts.
January 24, 1958.
*31 A. R. Sigourney, for plaintiff.
Thomas H. Walsh, Boston, Mass., for defendant.
WYZANSKI, District Judge.
This is a personal libel for salvage.
On September 23, 1957 this Court filed a memorandum, reported in 155 F.Supp. 518 and 1957 A.M.C. 2093; and, in accordance therewith, two days later entered a decree for the libellant for $140. Thereafter, two disinterested and learned authorities on the law of admiralty, Martin J. Norris, Esq. of Eastchester, N. Y., the author of a forthcoming treatise on The Law of Salvage, and Arnold W. Knauth, Esq. of New York City, the editor of the sixth edition of Benedict on Admiralty, courteously called to this Court's attention its elementary error in stating in the aforesaid memorandum that "a salvor has no lien for his service." Since this error was fundamental in this Court's reasoning, and since the error, if uncorrected, might not merely injure the parties but also mislead others, this Court, after notifying counsel in this case and allowing them opportunity to be heard, has determined to vacate its decree of September 25, 1957, to withdraw its opinion of September 23, 1957, to file as a substitute this opinion, and to enter a new decree conforming to this substitute opinion. Cf. Reid v. Covert, 354 U.S. 1, 5, 77 S.Ct. 1222, 1 L.Ed.2d 1148.
The facts necessary for this substitute opinion may be briefly stated.
Saturday, November 19, 1955, the schooner The Snow Maiden, under the command of its owner White, went aground on Brown's Bank, during a storm. At 4 a. m. Sunday, White, without any intention of returning, abandoned the schooner. At 3 p. m. that afternoon White engaged Davis to salve the *32 vessel. By Monday morning The Snow Maiden had broken up, leaving on the sandy beach the engine and certain other gear. At 7 a. m. on Monday, Powers, a fisherman, headed out to sea to fish. He knew that there had been a wreck, but he did not know or inquire about White's arrangements for salvage. Powers observed the engine on the beach, and correctly concluded that it might become lost in the sand or sea, and was, at the least, being damaged by salt water and sand. After 3 hours work he and his crew salved the engine worth $400, a pump worth $15, and other items of no value.
Powers brought the salved property promptly to Plymouth Harbor. White who was at the dock demanded the engine but made no offer of payment. Powers, valuing the engine at $1500 to $1700, demanded for his salvage services $1000. White refused to pay. Following the advice of local harbor and police authorities, Powers turned the engine over to Davis for immediate oiling, stripping down, and reconditioning to prevent further deterioration. Some weeks later, on advice of counsel, Powers told Davis to give the engine to White, and Davis did so.
With White's permission, Powers went back to the scene of the wreck and salved the mast. In so doing, Powers did $30 damage to his boat, and used up wire worth $100. The spar proved to be worth only $50.
From the foregoing facts, the Court reaches the following conclusions.
Powers was warranted in volunteering his services as a salvor. White had abandoned the vessel, and left her a derelict. The (Barque) Island City, 1 Black. 121, 66 U.S. 121, 128, 17 L.Ed. 70; The Gerbeviller, D.C.Mass., 34 F.2d 825, 826. In the words of Justice Butler in Merritt & Chapman Derrick & Wrecking Co. v. United States, 274 U.S. 611, 613, 47 S.Ct. 663, 664, 71 L.Ed. 1232, "any prudent man would have accepted" the services of Powers as a salvor, since the engine and gear might have disappeared before Davis could reach them.
The fact that White had not requested his aid is not a bar to Power's right to salve. Merritt & Chapman Derrick & Wrecking Co. v. United States, supra; The Annapolis, Lushington 355, 375. Cf. Restatement, Restitution, § 117 (stating the common law, not the admiralty rule). Nor is Powers automatically barred because White gave to Davis the right to salve The Snow Maiden. We may suppose that situations do exist in which a salvor would not receive any award because he knew or should have known that the owner had asked another for help, and that other would arrive before peril caused irreparable loss. In such situations the salvor's claim might be denied because his assistance was being "forced upon a ship", Merritt & Chapman, Derrick & Wrecking Co. v. United States, 274 U.S. 611, 613, 47 S.Ct. 663, 664, that is, he would be proceeding in the face either of an "express and reasonable prohibition on the part of the vessel to which services were rendered" [See the international rule laid down by Article 3 of the Salvage Convention, 37 Stat. 1671, which, though not binding in municipal matters, is suggestive of what is the local maritime law], or of information which gave him "reason to believe that the owner did not desire him so to act." [See the common law rule set forth in Restatement, Restitution § 117.] But the case at bar differs from such supposititious cases. Here the person, Davis, who had been selected as salvor by the owner would not have arrived in time to prevent at least the serious depreciation and probably the loss of the engine. Under these circumstances, knowledge of Davis's contract or failure to learn about that contract is no bar to Powers' salvage claim. The John Wurts, D.C.S.D.N.Y., 13 Fed.Cas. No. 7,434, pp. 903, 906; The Esperance, 1 Dodson 46.
Having properly acted as a salvor, Powers, had a lien upon the salved property for the reasonable value of his services. The Sabine, 101 U.S. 384, 386, 25 L.Ed. 982; The William Leishear, D.C.Md., 21 F.2d 862, 864; The *33 Emblem, D.C.Me., 8 Fed.Cas.No. 4,434, 611, at p. 613: Norris, Marine Salvage for Fallen Aircraft, 30 N.Y.U.Law Rev. 1208, 1210; Robinson, Admiralty, p. 430; Gilmore and Black, The Law of Admiralty, p. 514; Benedict, Admiralty, (6th ed. Knauth) Vol. 1, p. 344. That is, the maritime law gives to the salvor a possessory lien which the common law does not give to an ordinary finder. Cf. Restatement, Security § 61(e). See cases cited at pages 173 and 174 of Seavey and Scott's Notes to Restatement, Restitution § 117.
In view of his lien, Powers when he arrived at the Plymouth dock was not under a duty immediately to surrender the engine and gear either to a court or the owner. Vincent v. The Penelope, D.C.S.C., 28 Fed.Cas.No.16,946, p. 1197. Powers, so long as he recognized the par-amount claim of the owner, could wait a reasonable time before filing in court a libel in rem for salvage. Cf. Lambros Seaplane Base v. The Batory, 2d Cir., 215 F.2d 228, 234. He was not bound to tender the property to White. If White wanted the property forthwith it was incumbent upon him to make a tender of either payment of the fair value of Powers's services, or a bond or other security ample to cover the reasonable value of such services. Scott v. The Clara E. Bergen, D.C.S.C., 21 Fed.Cas.No.12,526a, pp. 816, 817; Western Transp. Co. v. The Great Western, D.C.N.D.N.Y., 29 Fed.Cas.No.17,443, pp. 777, 788; The John Wurts, D.C.S.D.N.Y., 13 Fed.Cas. No.7,434, p. 903; Hartshorn v. Twenty-Five Cases of Silk, D.C.S.D.N.Y., 11 Fed. Cas.No.6,168a, p. 713.
But it may be contended that although Powers originally had a lien, and therefore had a right to keep possession of the property until he was tendered the fair value of his services, or security therefor, or until a reasonable time for filing a libel in rem had expired, he lost that lien by demanding $1000 from White. If Powers had demanded $1000 not as payment for his services but as payment for the engine, that is if he had denied White's title, or had sought to use the possessory lien for the "assertion of a right other than that given by the lien" (Hamilton v. McLaughlin, 145 Mass. 20, 22, 12 N.E. 424, 426), then he would have lost the lien, have been a converter, and have been subject to loss or diminution of his salvage award because of his misconduct. However, Powers asked $1000 as payment for his services, and in making this demand, excessive as it was, Powers was in good faith. Under these circumstances he did not lose his lien, nor was his conduct such as to excuse White from making an actual tender of payment or security. Folsom v. Barrett, 180 Mass. 439, 441-442, 62 N.E. 723, 724. As Judge Hammond said in his careful and learned opinion in Folsom's case: "Where, as in this case, there is a lien, which is insisted upon by the creditor, and his only error is in making an excessive demand, which he honestly believes to be correct, the fact that the demand is excessive does not ordinarily relieve the debtor from the necessity of making a tender."
Having concluded that Powers had a right to salve the engine and gear of The Snow Maiden, that he had a valid possessory lien, that he did not lose it by misconduct, and that although he was under no legal obligation to do so, he voluntarily surrendered the engine and gear to the owner without being tendered payment for services or security therefor, the Court now turns to the question of the value of Powers' services. Taking into account the $400 value of the engine and $15 value of the pump, the time spent by the salvor, the small risks he ran, and other factors which are appropriate under the rule in The Blackwall, 10 Wall. 1, 77 U.S. 1, 14, 19 L.Ed. 870, and authorities cited in Gilmore & Black pp. 461-464, this Court awards to libellant for his first salvage of the engine and gear $200. For the recovery of the mast, the result of the second salvage expedition, this Court awards libellant a further $40. No interest for the period before the decree shall be payable.
Decree for libellant for $240.