**U.S. DOMINATOR, INC., as owner of the U.S. DOMINATOR, on its own behalf and on behalf of the officers and crew, and Flyco, Inc., as owner of the F/V FLYING CLOUD, on its own behalf and on behalf of the officers and crew, Plaintiffs-Appellees,**

v.

**FACTORY SHIP ROBERT E. RESOFF, her rigging, tackle, apparel, furniture, engines, gear, etc., in rem, and Sea-Alaska Products, Inc., in personam, Defendants-Appellants,**

**and**

**M/V SEA ALASKA, Official No. 551889, her rigging, tackle, apparel, furniture, engines, gear, etc., in rem, Defendant.**

No. 84–4049.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1985.

Decided Aug. 15, 1985.

As Amended Sept. 4, 1985.

Michael Woodell, Bradbury, Bliss & Riordan, Inc., Anchorage, Alaska, Jacob A. Mikkelborg, Jeffrey L. Jernegan, Seattle, Wash., for plaintiffs-appellees.

Martin Detels, Detels, Madden, Crockett & McGee, Seattle, Wash., for defendants-appellants.

Before GOODWIN, SCHROEDER and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

U.S. Dominator, Inc. and Flyco, Inc. ("Dominator") brought this action to obtain a salvage award from the vessel *Robert E. Resoff,* the vessel *Sea Alaska,* and Sea-Alaska Products, Inc. The district court entered judgment in favor of Dominator. We affirm.

## I

### Background

Sea-Alaska Products owns the *Robert E. Resoff* and the *Sea Alaska.* The *Robert E. Resoff* is a 11,780 ton unpowered floating fish processing vessel. The *Sea Alaska* is a 3,870 ton powered floating fish processing vessel. U.S. Dominator, Inc. owns the *U.S. Dominator.* Flyco, Inc. owns the *Flying Cloud.* The *U.S. Dominator* and the *Flying Cloud* are 124-foot commercial crab vessels.

On January 17, 1980, the *Robert E. Resoff* and the *Sea Alaska* were moored in Dutch Harbor, Alaska. Early that morning, a severe storm struck Dutch Harbor. The winds, which were gusting up to 100 miles per hour, caused several of the *Robert E. Resoff*'s moorings to part. Fearing that the remaining moorings would part, a foreman for Sea-Alaska Products requested assistance. When the Dutch Harbor police informed the foreman that no tugboats were available, the foreman requested that a "Mayday" signal be sent. The *U.S. Dominator* and the *Flying Cloud* responded.

The *U.S. Dominator* and the *Flying Cloud* began pushing against the *Robert E. Resoff* to protect the remaining moorings and to keep the *Robert E. Resoff* from striking the *Sea Alaska,* which was moored next to the *Robert E. Resoff.* Despite the salvor's efforts, the *Robert E. Resoff* collided with the *Sea Alaska.*

The collision of the two vessels placed considerable strain on the *Sea Alaska*'s moorings. In addition, it was likely that the *Robert E. Resoff* would repeatedly strike the *Sea Alaska,* causing considerable damage to both vessels and increasing

the strain on the *Sea Alaska*'s moorings. Accordingly, representatives of Sea-Alaska Products asked the salvors to attempt to push the *Robert E. Resoff* away from the *Sea Alaska*. The salvors were successful. By the next morning, the salvors had returned the *Robert E. Resoff* to her original position. At the request of Sea-Alaska Products, the salvors remained for three days while the moorings were secured.

On April 17, 1981, Dominator filed the present action, seeking an award for the salvage of the *Robert E. Resoff*. On October 1, 1982, Dominator filed a separate complaint for the salvage of the *Sea Alaska*. On February 11, 1983, a magistrate granted Dominator's motion for leave to amend its complaint in the present action to add salvage claims against the *Sea Alaska*. On June 13, 1983, the separate complaint was dismissed for lack of jurisdiction on the ground that the statute of limitations had run.

After a trial, the district court entered judgment in favor of Dominator. Dominator received an award of $250,000 against the *Robert E. Resoff* and Sea-Alaska Products for the salvage of the *Robert E. Resoff* and an award of $100,000 against Sea-Alaska Products for the salvage of the *Sea Alaska*. Dominator also received an award for expenses, interest, and costs. The district court did not enter judgment against *Sea Alaska*. Accordingly, the *Sea Alaska* is no longer a party to this suit.

## II

### Amendment of the Complaint

Dominator's original complaint named two defendants—the *Robert E. Resoff* and Sea-Alaska Products—and claimed relief only for the salvage of the *Robert E. Resoff*. After the statute of limitations had run, Dominator filed a motion for leave to amend its complaint. The amended complaint added a claim for the salvage of the

*Sea Alaska* and joined the *Sea Alaska* as a defendant. The district court referred the motion to a magistrate, who ruled in favor of Dominator.

### A. *Reviewability*

Under 28 U.S.C. § 636(b)(1)(A), a district court may designate a magistrate to decide a nondispositive motion.[1] Section 636(b)(1)(A) provides that the district court "may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law." The statute does not set forth a specific procedure for challenging a magistrate's order before the district court. The local rules for the District of Alaska, however, provide that "[a]ny party may appeal from a magistrate's order determining a [nondispositive] motion or matter ... within ten (10) days after issuance of the magistrate's order...." Dist.Alaska Mag.R. 12(A). The defendants failed to appeal from the magistrate's ruling on Dominator's motion. Dominator contends that the defendants are therefore barred from challenging the magistrate's ruling before this court. This contention raises a question of first impression in this circuit.

■ Initially, we reject Dominator's argument that the defendants' failure to file objections to the magistrate's order constituted a waiver of the right to challenge that order before this court. We addressed a similar issue in *Britt v. Simi Valley Unified School District*, 708 F.2d 452 (9th Cir.1983). In *Britt*, a party failed to file objections to a magistrate's findings and recommendations regarding a dispositive motion that had been referred to the magistrate pursuant to section 636(b)(1)(B). In holding that the losing party had not waived the right to challenge the magistrate's conclusions of law before this court, we emphasized the absence of language in

---

1. Contrary to the defendants' assertions, Dominator's motion for leave to amend its complaint was properly treated as a nondispositive motion. *See Princiotta v. New England Telephone & Telegraph Co.*, 532 F.Supp. 1009, 1011 (D.Mass.1982); 7 J. Moore, J. Lucas & K. Sinclair, *Moore's Federal Practice* ¶ 72.03[2.–4] (1984); 12 C. Wright, A. Miller & F. Elliott, *Federal Practice and Procedure* § 3076.5, at 30–31 (Supp.1984).

the statute indicating that the failure to file objections barred a subsequent appeal. 708 F.2d at 454–55. In this case, we note that neither section 636(b)(1)(A) nor the local rule indicates that the failure to file objections in district court bars a subsequent appeal. Accordingly, we decline to find that the defendants have waived their right to challenge the magistrate's order.

■■■ We have general jurisdiction to review final judgments of district courts pursuant to 28 U.S.C. § 1291. In reviewing a final judgment, we have jurisdiction to review interlocutory rulings that may have affected the outcome of the proceedings in the district court. *Sackett v. Beaman*, 399 F.2d 884, 889 n. 6 (9th Cir.1968). While the magistrate's ruling was not a ruling by the district judge, it nevertheless affected the outcome of the trial and is therefore reviewable on appeal. *See Merritt v. International Brotherhood of Boilermakers*, 649 F.2d 1013, 1019 (5th Cir. 1981); *see also Britt v. Simi Valley Unified School District*, 708 F.2d 452, 454–55 (9th Cir.1983) (holding that errors of law in a magistrate's findings and recommendations pursuant to section 636(b)(1)(B) can be challenged on appeal even in the absence of the filing of objections in the district court). *But see United States v. Renfro*, 620 F.2d 497, 500 (5th Cir.), *cert. denied*, 449 U.S. 921, 101 S.Ct. 321, 66 L.Ed.2d 149 (1980). While we recognize the importance of correcting erroneous interlocutory rulings as early as possible, the failure to challenge an erroneous interlocutory ruling does not make the error appeal proof when the final judgment comes before this court for review. Accordingly, we have jurisdiction to consider the defendants' challenge to the magistrate's ruling in this case.

### B. *The Magistrate's Ruling*

The magistrate allowed Dominator to amend its complaint pursuant to Fed.R. Civ.P. 15(a). The defendants do not challenge that decision. Instead, the defendants argue that the amendment should not have been allowed to relate back to the date of the original pleading. It is undisputed that Dominator's claim for the salvage of the *Sea Alaska* was time barred at the time of the amendment. *See* 46 U.S.C. § 730. The magistrate rejected the defendants' arguments and allowed the amendment to relate back.

■■■ Initially, the defendants argue that the magistrate erred by allowing the addition of the *Sea Alaska* as an in rem defendant. The district court, however, did not enter judgment against the *Sea Alaska*. Accordingly, the issue of whether the amendment adding the *Sea Alaska* related back is not properly before us.

■■■ The defendants also argue that the amendment adding a claim for the salvage of the *Sea Alaska* should not have been allowed to relate back. Federal Rule of Civil Procedure 15(c) allows a claim to relate back if "the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading...." Paragraph 13 of the original complaint stated:

> While assisting the vessel ROBERT E. RESOFF, great risk and danger were involved both to the vessels and personnel because of the likelihood of F/V FLYING CLOUD and U.S. DOMINATOR being crushed between the ROBERT E. RESOFF and M/V SEA–ALASKA. ROBERT E. RESOFF, without motor power, was adrift and being driven downwind by the gale and, had she not been intercepted, would have crushed M/V SEA–ALASKA. This would have caused considerable collision damage to the above-named vessel as well as additional damage to the ROBERT E. RESOFF, with a very real and present danger of sinking.

We conclude that the magistrate's ruling was appropriate. *See Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259 n. 29 (9th Cir. 1982), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983).

### III

### *The Prior Judgment*

■■■ After the magistrate granted Dominator's motion for leave to amend its com-

plaint in the present action, the district court dismissed the separate complaint for the salvage of the *Sea Alaska* ("the *Sea Alaska* action") on the ground that the statute of limitations had run. Approximately nine months later, the defendants filed a motion for summary judgment in the present action, claiming that Dominator's claim for the salvage of the *Sea Alaska* was barred by res judicata. The district court denied the motion as untimely and without merit.

A pretrial order controls "the subsequent course of the action unless modified by a subsequent order." Fed.R.Civ.P. 16(e); *see United States v. First National Bank*, 652 F.2d 882, 886–87 (9th Cir.1981). The pretrial order in the present action set April 29, 1983 as the deadline for filing preliminary motions. The defendants filed their motion for summary judgment on March 7, 1984. Although we note that the district court did not dismiss the *Sea Alaska* action until six weeks after the deadline for filing preliminary motions in the present action, the record reveals that the defendants never requested a modification of the pretrial order to allow the filing of their motion. Accordingly, we conclude that the district court properly denied the motion as untimely.[2]

### IV

#### The Validity of the Salvage Claim

■ The defendants contend that Dominator's actions did not establish a valid claim for the salvage of the *Sea Alaska.* The elements of a salvage claim are as follows:

> There must be a maritime peril from which the ship or other property could not have been rescued without the salvor's assistance. The salvor's act must be voluntary—that is, he must be under no official or legal duty to render the assistance. The act must be successful in saving, or in helping to save, at least a part of the property at risk.

G. Gilmore & C. Black, *The Law of Admiralty* § 8–2, at 534–35 (2d ed. 1975); *see* 3A M. Norris, *Benedict on Admiralty* § 2 (1983). The defendants do not argue that those three elements—maritime peril, voluntary assistance, and success—were not established. Instead, the defendants assert that the benefits to the *Sea Alaska* were "indirect" and that Dominator therefore cannot claim a salvage award.

■ In *Merritt & Chapman Derrick & Wrecking Co. v. United States*, 274 U.S. 611, 613, 47 S.Ct. 663, 664, 71 L.Ed. 1232 (1927), the Court stated that when the benefits from salvage operations are "incidental and indirect," a salvage claim cannot be sustained "in the absence of request for or acceptance of the service." The defendants argue that *Merritt & Chapman* controls this case. We disagree. The benefits to the *Sea Alaska* were direct and immediate. The district court specifically found that the salvors' efforts prevented additional collisions between the *Sea Alaska* and the *Robert E. Resoff* and the record supports that finding. The record also reveals that the defendants requested the salvors' services on behalf of the *Sea Alaska.* Accordingly, the rule stated in *Merritt & Chapman* does not apply to this case.

### V

#### The Salvage Award

" 'An appellate court is, generally speaking, loath to change a salvage award unless it appears to be based on incorrect principles, or upon a misapprehension of the facts, or where it is so grossly excessive or inadequate as to be deemed an abuse of discretion.' " *San Francisco Bar Pilots v. The Vessel Peacock*, 733 F.2d 680, 681 (9th Cir.1984) (quoting 3A M. Norris, *Benedict on Admiralty* § 311 (1980)). The classic formulation of the factors to be considered in assessing a salvage award was set forth in *The Blackwall*, 77 U.S. (10 Wall.) 1, 13–14, 19 L.Ed. 870 (1869):

> Courts of admiralty usually consider the following circumstances as the main in-

---

**2.** In light of this conclusion, we do not reach the     merits of the defendants' res judicata claims.

gredients in determining the amount of the reward to be decreed for a salvage service: (1.) The labor expended by the salvors in rendering the salvage service. (2.) The promptitude, skill, and energy displayed in rendering the service and saving the property. (3.) The value of the property employed by the salvors in rendering the service, and the danger to which such property was exposed. (4.) The risk incurred by the salvors in securing the property from the impending peril. (5.) The value of the property saved. (6.) The degree of danger from which the property was rescued.

*See St. Paul Marine Transportation Corp. v. Cerro Sales Corp.*, 505 F.2d 1115, 1120 (9th Cir.1974); G. Gilmore & C. Black, *supra*, § 8–8, 3A M. Norris, *supra*, ch. 21.

A. *The Assessment of the Award*

The defendants challenge several of the district court's findings regarding the *Blackwall* factors. Because the district court's findings were factual, we apply the clearly erroneous standard. *See Anderson v. City of Bessemer City*, —— U.S. ——, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985).

1. *Labor Expended*

██ The district court found that the *U.S. Dominator* and the *Flying Cloud* "maintained twenty-four hour watches and assisted for a total of four days and eight and one-half hours." Although the defendants question the amount of labor actually expended, the district court's finding is not clearly erroneous.

2. *Promptitude, Skill, and Energy*

The defendants do not dispute the district court's finding that the salvors "exhibited great skill."

3. *Value of the Property Employed and the Danger to that Property*

The defendants do not dispute the valuation of the *U.S. Dominator* and the *Flying Cloud*. The defendants dispute the danger to those vessels only by asserting that they were not in danger of sinking. Since the district court made no such finding, that assertion is irrelevant.

4. *Risk Incurred*

██ The district court found that "[t]he captains and the crews of the U.S. DOMINATOR and the FLYING CLOUD faced substantial personal danger in rendering the salvage services in question. During the storm the weather was extremely cold, winds were high, and visibility was non-existent at critical times." The district court also found that the salvors "risked substantial losses of income had their vessels been damaged." The defendants vigorously dispute those findings. Nevertheless, the record amply supports the district court's findings. We conclude that the district court's findings are not clearly erroneous.

5. *The Value of the Property Saved*

██ The district court found that the *Robert E. Resoff* was insured "under an agreed value hull policy for $3,500,000 which best represents her value as of January 17, 1980." It is generally acknowledged that insurance values are a poor substitute for testimony concerning fair market value. *See* 3A M. Norris, *supra*, § 263, at 21–24. In this case, however, no evidence was produced to establish the fair market value of the *Robert E. Resoff*. The defendants offered evidence showing that the book value of the vessel for accounting purposes was $2.5 million. After various adjustments, the defendants produced the figure $2,693,281.74. Robert E. Resoff, the manager of Sea-Alaska Products, testified that the defendants' figure "could be" a "good approximation" of the fair market value of the vessel. Resoff also testified that insurance values are inflated. In the absence of better evidence, however, the district court's valuation was permissible.

6. *The Degree of Danger*

██ The defendants claim that the district court must be reversed because of the absence of a specific finding regarding the

degree of danger. This argument is meritless. We do not require specific findings of fact for each factor in a multifactor analysis. *See, e.g., Magna Weld Sales Co. v. Magna Alloys and Research Pty. Ltd.,* 545 F.2d 668, 671 (9th Cir.1976); *cf. St. Paul Marine,* 505 F.2d at 1120 (affirming a district court award based on factors "analogous to" the *Blackwall* factors). The district court stated that it had applied the *Blackwall* factors. Accordingly, the absence of a specific finding of fact regarding the degree of danger is not a ground for reversal.[3]

## B. *Benefit to the Salvaged Vessel*

■ The defendants contend that the district court erred by failing to make a finding regarding the benefit conferred upon the salvaged vessels. This argument is meritless. The amount of benefit conferred is not a separate *Blackwall* factor. Moreover, a quantum meruit approach is inappropriate because a salvage award is intended "as a reward for perilous services voluntarily rendered." 3A M. Norris, *supra,* § 235, at 19–5. The Fifth Circuit explained this principle as follows:

> Awards for performance of salvage services are not limited to a strict quantum meruit measure of the value of the services performed. Rather, the award is calculated to include a bounty or premium based upon the risk involved in the operation and the skill with which it was performed.

*Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 640 F.2d 560, 567 (5th Cir.1981). We conclude that the district court applied the proper legal standard.[4]

## C. *The Size of the Award*

■ The defendants assert that the salvage awards were excessive. In light of the findings discussed above, the total salvage award of $350,000 was not so excessive as to constitute an abuse of discretion.[5]

## D. *Prejudgment Interest*

■ The decision to grant prejudgment interest rests within the discretion of the district court. *Western Pacific Fisheries, Inc. v. SS President Grant,* 730 F.2d 1280, 1288 (9th Cir.1984). Prejudgment interest is awarded so that the award will reflect the present value of the plaintiff's claim. *See Turner v. Japan Lines, Ltd.,* 702 F.2d 752, 756 n. 4 (9th Cir.1983). The defendants argue that the grant of prejudgment interest in this case was an abuse of discretion because (1) Dominator originally sought a salvage award of $17.5 million, (2) Dominator delayed three years before seeking an award for the salvage of the *Sea*

---

3. The district court made numerous findings that reflect the danger to the *Robert E. Resoff* and the *Sea Alaska*. The defendants challenge these findings on various grounds. First, the defendants contend that the district court's findings do not take into account the existence of an anchor on the *Robert E. Resoff*. While it is true that the district court did not make specific findings regarding the anchor, it is obvious that the district court did not think the anchor would save the *Robert E. Resoff*. Two witnesses testified in support of that conclusion. In any event, the district court was not obligated to make a specific finding of fact regarding the anchor.

Second, the defendants challenge Finding of Fact 26, which states that "[t]he senior Sea-Alaska Products, Inc. managers on scene actually and reasonably apprehended injury or destruction to the RESOFF and SEA ALASKA." Finding of Fact 26 is thoroughly supported by the record.

Finally, the defendants challenge Findings of Fact 28 and 29 as "contradictory and unsupported." Finding of Fact 28 is based on the expert testimony of William Milwee. Milwee's testimony also supports Finding of Fact 29. The Findings are not contradictory when considered in light of that testimony.

4. We also reject the defendants' contention that the district court based its award on a percentage of the vessels' value. The district court's findings of fact and conclusions of law reflect a correct application of the relevant legal principles.

5. The defendants also argue that Dutch Harbor is an "inner harbor." It is well settled that a smaller salvage award is appropriate "when the service takes place in a harbor where help—especially tow-boats—is plentiful." 3A M. Norris, *supra,* § 252, at 21–10. The record does not support the defendants assertion that this principle should apply in this case.

*Alaska,* (3) Dominator's vessels were not damaged, and (4) the events took place in an "inner harbor." None of those allegations establishes an abuse of discretion on the part of the district court.

## VI

### *Conclusion*

The judgment of the district court is AFFIRMED.